(No. 27112.—Writ denied.)

THE PEOPLE *ex rel.* George F. Barrett, Attorney General, Petitioner, *vs.* JAMES V. BARTLEY, Judge, Respondent.

*Opinion filed May 20, 1943—Rehearing denied Sept. 16, 1943.*

GEORGE F. BARRETT, Attorney General, (WILLIAM S. WILSON, of counsel,) for petitioner.

FRANK J. JONES, ODE L. RANKIN, PAUL E. PRUTSMAN, and SOL R. FRIEDMAN, for respondent.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an original petition for *mandamus* filed by the relator to compel the respondent, James V. Bartley, a judge of the circuit court of Will county, to expunge from the records of said court an order entered by the respondent on July 18, 1942, in a certain *habeas corpus* proceeding entitled "The People of the State of Illinois *ex rel.* Hugh McLaughlin, petitioner, v. E. M. Stubblefield, Warden of the Illinois State Penitentiary, Stateville, Joliet, respondent." The said order found that Hugh McLaughlin was

unlawfully detained by the said warden and that McLaughlin be forthwith discharged and set at liberty.

The undisputed facts shown by the pleadings are that Hugh McLaughlin, upon a plea of guilty in the circuit court of Winnebago county, Illinois, on October 18, 1934, was sentenced for a term of not less than the minimum or greater than the maximum, which is not less than one year nor more than twenty years, in the Illinois State Penitentiary at Joliet, Illinois, for the crime of uttering a forged check. In conformity with the order and judgment of the circuit court of Winnebago county, the said Hugh McLaughlin was delivered to the State Penitentiary pursuant to the penitentiary *mittimus* issued out of the Winnebago county circuit court.

On April 20, 1936, without the said McLaughlin having made an application for parole, the Parole Board of the State of Illinois, in an *ex parte* proceeding on its part, paroled the said McLaughlin for the period of his maximum sentence, the said parole to become effective on May 16, 1936.

On May 15, 1936, before the effective date of the parole according to its own terms, the Governor of the State of Illinois honored a requisition of the State of Wisconsin dated May 5, 1936, for the body of the said Hugh McLaughlin as a fugitive from justice of that State and issued his Governor's extradition warrant authorizing the arrest, detention and extradition of Hugh McLaughlin from the State of Illinois to the State of Wisconsin.

On May 16, 1936, the Governor's warrant was presented to the warden in charge of Stateville, who delivered McLaughlin to the agent of the State of Wisconsin to be returned to the State of Wisconsin. He was there tried, convicted upon the charge for which he was extradited, and served a term in the State prison at Waupon, ending September 27, 1937. At that time there was no warrant or order of detention on file with the Wisconsin

prison authorities from the State of Illinois or elsewhere. Upon his release, without returning to Illinois, he departed from Wisconsin to Ohio and in April of 1938 was convicted and sentenced to serve a term in the Ohio State Penitentiary for a term of one to three years. He was released from this imprisonment on or about June 24, 1940.

While imprisoned in Ohio the parole authorities of the State of Illinois placed a detainer request with the prison authorities of the Ohio State Penitentiary for the detention of McLaughlin. Extradition proceedings were instituted and completed by requisition of the Governor of Illinois made upon the Governor of Ohio for an alleged, violation of McLaughlin's parole agreement and, as a result thereof, McLaughlin was returned to Stateville Prison in the State of Illinois about June 30, 1941. About the first day of July, 1942, McLaughlin filed a petition for writ of *habeas corpus* in the circuit court of Will county, Illinois. A motion to dismiss the petition was filed by E. M. Stubblefield, warden of the Illinois State Penitentiary. This motion was denied by the circuit court of Will county, Illinois, and the writ of *habeas corpus* prayed for in the petition was issued. The judge of the circuit court of Will county, respondent here, entered an order that Hugh McLaughlin be forthwith discharged and set at liberty and go hence without day on July 18, 1942. Thereafter, in conformity with the order, McLaughlin was, set at liberty and released from further confinement in the Illinois State Penitentiary at Joliet.

On April 20, 1936, while McLaughlin was confined at Stateville, an order was made by the Parole Board of Illinois directing the warden of Stateville to permit McLaughlin to depart, "temporarily and conditionally from the penitentiary pursuant to the Statute in such case made and provided, upon some person, persons, firm or corporation agreeing to give said Hugh McLaughlin, No. 609-F, employment and keeping him employed during the period

of his maximum or until he receives his final discharge, and who will promise that he will conform to all the conditions set forth in his parole agreement." On the bottom was endorsed the following: "Effective May 16, 1936, Milwaukee, Wisconsin, and Syracuse, New York, authorities to be notified upon release."

Apparently McLaughlin made no application for a parole, and the action of the board was *ex parte;* there were no sponsors for McLaughlin and there was no compliance with the conditions of the order. Paragraph 5 of petitioner's statement of facts in this case states that on May 15, 1936, the Governor of Illinois issued an extradition warrant to the State of Wisconsin, upon request of the Governor of Wisconsin, authorizing the arrest, detention and extradition of Hugh McLaughlin from the State of Illinois to the State of Wisconsin. Upon the presentation of said extradition warrant to the Illinois State Penitentiary, Joliet, Illinois, on May 16, 1936, the said Hugh McLaughlin was delivered by the warden of the Illinois State Penitentiary to the agent of the State of Wisconsin, and thereupon returned into the State of Wisconsin to stand trial for the commission of an alleged crime in that State. It would seem clear, therefore, that McLaughlin was not released from Stateville on parole.

On March 16, 1940, one of the parole officers requested the warden to issue a warrant for McLaughlin's arrest, alleging that he had disappeared for parts unknown, and accordingly a warrant was issued. The warden thereupon, in June, 1941, made a requisition upon the Governor of Illinois for a requisition upon the Governor of the State of Ohio, alleging that McLaughlin was a fugitive from justice and that he had been paroled "outside of the penitentiary building and enclosure." It further stated that on March 16, 1940, McLaughlin fled from the State of Illinois as a parole defaulter. The Governor of Illinois complied with the request, made requisition upon the Gov-

ernor of Ohio, and McLaughlin was returned to Illinois as a fugitive from justice.

The petition for *habeas corpus* filed by McLaughlin in the circuit court of Will county sought release on the ground that he was not released by virtue of any parole issued by the Board of Pardons, and that the warrant of extradition issued by the Governor of Illinois, which resulted in the delivery of McLaughlin to the Wisconsin authorities, constituted a waiver of jurisdiction by the State of Illinois over the person of McLaughlin, and operated as a pardon or commutation of the sentence and relieved him from serving the balance of the sentence imposed upon him by the Winnebago county circuit court. This is based on paragraph 2 of section 22 of chapter 65, being the Habeas Corpus Act, which provides that one cause for discharge is "Where, though the original imprisonment was lawful, yet, by some act, omission, or event which has subsequently taken place, the party has become entitled to his discharge."

It is contended first by the petitioner in this case that the parole issued to McLaughlin by the Illinois authorities was a valid parole; that McLaughlin was a parole violator; and the decision of that problem is one of the main questions arising on this petition.

On May 16, 1936, the same day that McLaughlin was turned over to the authorities from Wisconsin by the warden, the prisoner signed the following statement:

"I, Hugh McLaughlin, an inmate of the above named Division of the Illinois State Penitentiary hereby declare that I have carefully read and do clearly understand the contents and conditions of the above rules regulating the parole of prisoners and the above parole agreement and I hereby accept the same and do hereby pledge myself to comply honestly with all said conditions.

Signed in triplicate this 16th day of May, 1936.

HUGH McLAUGHLIN."

If it be held that McLaughlin was released on parole on that date, it is clear that he violated the terms of such parole and became a fugitive from justice after serving out his sentence in the State of Wisconsin. If McLaughlin was not released on parole but was taken out of the penitentiary by the warden while serving his sentence and delivered to the agent for the State of Wisconsin under the Governor's extradition warrant, a question is raised as to the effect of such action, and whether or not it operated to commute the sentence of McLaughlin as of that date.

While the Board of Pardons and Paroles did enter an order on April 20, 1936, directing the release of McLaughlin on parole effective May 16, 1936, and while McLaughlin did sign the statement above quoted on the latter date, the circumstances do not seem to warrant the conclusion that his parole was ever completed. The order admitting him to parole was a conditional one, and the conditions were never complied with. There was no sponsor suggested or provided for him, and when the release came through the warden, there was no mention of parole. He was released solely on the demand made by the State of Wisconsin and the Governor's requisition warrant issued in obedience thereto. We believe the record shows that McLaughlin was never released at any time but custody was simply transferred from the warden at the Illinois penitentiary to the authorities from the State of Wisconsin. Had McLaughlin been extradited while absent from the prison and while on parole it would have created a different situation.

Therefore, the question in the case is, what was the legal effect of the act of the Governor in taking McLaughlin out of the penitentiary on a fugtive warrant and delivering him to the State of Wisconsin, without any reservations, and at a time when he was actually serving a term of imprisonment under the sentence and judgment of the circuit court of Winnebago county.

The power of extradition exercised by the executives of the several States originates from section 2 of article IV of the constitution of the United States, which provides: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

In contending that the Governor, in honoring the request of another State for extradition of one confined in the penitentiary of the asylum State, only waives temporarily the completion of the term of imprisonment and that the convict may thereafter be required to be returned to the State from which he had been previously extradited and compelled to complete the unserved portion of his sentence, the petitioner relies largely upon the case of *Commonwealth ex rel. Kamons* v. *Ashe, Warden,* 173 Atl. (Pa.) 715. In that case Kamons was convicted in Pennsylvania and was sentenced on November 26, 1932, to a term of one to five years' imprisonment. On June 3, 1933, Kamons was extradited to Ohio, there tried for murder, acquitted and returned by the Ohio Governor to Pennsylvania where he was reimprisoned under the *mittimus* of the original sentence. Kamons then filed an application for a writ of *habeas corpus,* testing the right to be further imprisoned. The trial court and the Superior Court of Pennsylvania denied the writ on the ground that while the Commonwealth of Pennsylvania waived rights when it surrendered Kamons to the State of Ohio, the extent of such waiver was limited by the agreement between the executives that if Kamons was acquitted on the charge of murder, he should be returned to the State of Pennsylvania. That case differs from the present case in that the Pennsylvania statute covers the exact situation presented in the *Kamons case.* It provides as follows: "Pro-

vided, If the executive authority of any other state or district requests the extradition of any person charged in that state with murder, and that person is imprisoned in a penal institution or jail of this State for a term less than imprisonment for life, the Governor of this State may deliver him or her up to the executive authority of the demanding state or district for the purpose of trial in said state or district: Provided, however, That prior to the removal of the person from this State, the executive authority of the demanding state or district shall have agreed that the person so delivered up is to be returned immediately to this State, at the cost of the demanding state or district, to serve the balance of his or her term of imprisonment in the event of his or her acquittal in the demanding state, or in the event of his or her conviction in such state of manslaughter or any degree of murder the punishment for which is less than death or imprisonment for life." Kamons was never, therefore, released from the jurisdiction of the State of Pennsylvania while he was in Ohio for the purposes of trial. In the case at bar there is no such statute governing temporary waiver of jurisdiction and there is a complete absence of any agreement for return between the Governors of Illinois and Wisconsin.

The precise question does not appear to have been decided by this court although it was commented upon in the case of *People* v. *Klinger,* 319 Ill. 275. There it appeared that while Klinger was in custody and awaiting trial in Sheboygan county, Wisconsin, the Governor of that State issued his fugitive warrant whereby Klinger was turned over to the agent from Illinois. He was taken to Adams county and placed on trial for robbery with a gun. He filed a plea in the Adams county circuit court alleging that he was constitutionally entitled to have a speedy trial in Wisconsin, and that his removal from that State under the extradition warrant violated that right. In that case this court said: "If at the time such requisition is made

the fugitive is in the custody of the courts of the asylum State under a charge of offense against its laws, the Governor thereof is not required to surrender such fugitive until after the judgment of the court of that State is satisfied. The executive of the asylum State may, however, relinquish the prisoner by waiving jurisdiction even though such fugitive is under the jurisdiction of the courts of such asylum State. (*Roberts* v. *Reilly,* 116 U. S. 80; *Hart* v. *Mangum,* 146 Ga. 497.) The right of the Governor of the asylum State to decline to honor a demand for extradition is a right of the State and is in nowise based on the personal right of the fugitive, and where no objection is made by the court or authorities who have jurisdiction over the fugitive, he has no right to object to the exercise of jurisdiction over him by the court of another State. When the requisition has been honored and the fugitive surrendered thereunder, such surrender will operate as a waiver of jurisdiction of the asylum State. (*United States* v. *Marrin,* 227 Fed. 319; *Cozart* v. *Wolf,* 185 Ind. 505; *State* v. *Eberstein,* 182 N. W. (Neb.) 500.)" The same mention is made in *People ex rel. McFadden* v. *Meyering,* 358 Ill. 442.

The Oklahoma Supreme Court had occasion to pass directly upon the question in the case of *In re Guy,* 269 Pac. 782. There an original *habeas corpus* proceeding was brought in the criminal court of appeals. The facts were that Guy was serving a sentence when the Governor issued an order upon the warden of the penitentiary to deliver Guy to the Federal authorities to be tried, and after trial, conviction and service of sentence as a Federal prisoner, to be returned to the warden. Guy was surrendered, convicted, sentenced and upon completing his sentence was held in the county jail for the warden of the penitentiary. On *habeas corpus* being filed and tried, the court held the conditions attached to the order, surrendering Guy to the Federal authorities, were void. In its opinion the Supreme

Court of Oklahoma said: "Petitioner was delivered to the federal authorities not by any judicial act, but by executive order in the nature of a pardon, not for the purpose of their prosecuting him and then returning him to the state authorities for completion of his sentence, but that he might be prosecuted and with no provision made for his return to the state authorities if acquitted; if convicted to be returned only when he had completed his sentence imposed by the federal court. This condition, we think, was beyond the power of the executive to make, and is a nullity. The instrument of the Governor designated as an 'order' by which petitioner was delivered to the federal authorities is in legal effect and meaning a pardon as to the penalty remaining under the sentence of the state court, though not a pardon in the full sense as restoring citizenship. Under this view of the act of the Governor and of the law, the petitioner having served his time under the federal sentence, and being now held by the sheriff of Oklahoma county for the state authorities, he is entitled to his discharge." By citing this case as authority we do not mean to approve all that is said about it being beyond the power of the Governor to attach conditions for return to his requisition warrant, but that question is not before us in this case.

Other cases adopting the principle of law that where a prisoner serving a sentence is extradited as a fugitive from justice and delivered to another State, jurisdiction over his person is forever waived by the asylum State are: *In re Whittington,* 167 Pac. (Cal.) 404; *State* v. *Saunders,* 288 Mo. 640; *Jones* v. *Morrow,* 154 Kan. 588. The legal effect and logic of these cases convince us that the waiver of jurisdiction of a State over a fugitive is a prerogative of the Governor, and that his extradition warrant takes priority over all State process by which the fugitive is held; that a prisoner cannot be handed from one jurisdiction to another for the purpose of trial, conviction and service

of a new sentence, before being returned to the asylum State for service of the unexpired sentence, without violating his constitutional rights.

We believe the action of the Governor, in the exercise of his constitutional powers in extraditing relator while he was in the service of a sentence from the Winnebago county circuit court, operated to waive any further jurisdiction over the person of the prisoner and that the circuit court of Will county correctly granted the writ in the *habeas corpus* proceeding in Will county and in discharging the prisoner. The writ of *mandamus* is denied.

*Writbienied.*