[File Cr. No. 200]

IN THE MATTER OF THE APPLICATION OF THOMAS H. AMUNDSON, JR., for a Writ of Habeas Corpus.

(20 NW2d 340)

Opinion filed October 22, 1945

*W. J. Austin,* for applicant.

*Nels G. Johnson,* Attorney General, and *P. O. Sathre,* Assistant Attorney General, for respondent.

Morris, J. The petitioner seeks his release from custody by virtue of an original writ of habeas corpus. He was taken into custody by the Sheriff of Burleigh County, North Dakota, pursuant to a warrant issued by the Governor of this State, upon the requisition of the Governor of the State of Minnesota. An application for a writ of habeas corpus was first made to the District Court of Burleigh County. That Court, after hearing on the petition, refused to issue the writ, whereupon application was made to this Court. See § 32–2204, Rev Code 1943.

It now appears that the petitioner was convicted of the crime of forgery in the second degree in the District court of Clay County, Minnesota, on March 6, 1940, and on the same day that Court adjudged that he serve a sentence in the State Prison at Stillwater, Minnesota, until discharged as provided by the statutes of that State. The crime for which the petitioner was thus convicted and sentenced was punishable by imprisonment in the State Prison for not more than ten years. Mason Minn Statutes 1927, § 10,326. Thus his sentence was indeterminate within the maximum provided by the Minnesota law.

On November 14, 1941, the petitioner was released from the Minnesota State Prison by the State Board of Parole under a parole agreement. This agreement provided that the petitioner should abide by all of the rules, regulations and conditions thereof, among others being the provision that he should not in any wise violate any state or federal law and further that:

"5. He shall, while on parole, remain in the legal custody and under the control of said State Board of Parole.

6. He shall be liable to be retaken and again confined within the enclosure of said State Prison for any reason that shall be satisfactory to the State Board of Parole, and at its sole discretion, until he receives written notice from said Board that his final discharge has been ordered."

Above the signature of the petitioner attached to the parole agreement appears the following:

"I, Thos. H. Amundson, Jr., an inmate of the Minnesota State Prison, declare that I have carefully read and clearly understand the contents and conditions of the above parole. I hereby

accept the same and pledge myself to honestly comply with the conditions thereof and will at once proceed to the place of employment provided for me with [when] turned over to [the] State of Wisconsin, State Department of Public Welfare at Madison, Wisconsin."

Upon his release the petitioner was taken by authorities of the State of Wisconsin to that State where he pleaded guilty to the crime of forgery committed in Wisconsin and was sentenced to prison for one year on November 15, 1941. The Wisconsin Court immediately released him on probation to the State Department of Public Welfare upon condition that he should not leave the jurisdiction of that Department. On January 19, 1942, the petitioner's probation in Wisconsin was revoked after the authorities learned that he had committed another forgery in Wisconsin and had absconded from that jurisdiction. After leaving Wisconsin the petitioner committed further forgeries in Minnesota and North Dakota. He was given a sentence of one year in the North Dakota Penitentiary which he has now served.

On January 7, 1942, the Minnesota Parole Board revoked the petitioner's parole after having received information that the petitioner had returned to Minnesota and passed forged checks there and upon information from the Wisconsin authorities that he had absconded from that State and had passed another forged check in Wisconsin. On the same day the Minnesota Parole Board issued its warrant directing that the petitioner be arrested and returned to the State Prison. On September 27, 1945, the Governor of Minnesota issued his requisition to the Governor of North Dakota setting forth that the petitioner "stands charged with violation of parole after having been convicted of the crime of forgery in the second degree" and asking that the petitioner be apprehended and delivered to an agent of the State of Minnesota. After the petitioner had served his sentence and had been released from the North Dakota Penitentiary, he was apprehended pursuant to the Minnesota request and an extradition hearing was had before the Governor of North Dakota, who thereupon issued his executive warrant di-

recting that the petitioner be arrested and delivered to the Minnesota agent. Article 4, § 2, of the Constitution of the United States contains the following provision:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

This provision has been incorporated into the statutes of North Dakota, with a slight alteration, as § 29-3002, Rev Code 1943, and is the foundation for our extradition procedure.

The petitioner claims that he is not a fugitive from justice from the State of Minnesota. He argues that he left Minnesota involuntarily in the custody of Wisconsin authorities and that the action of the Minnesota Parole Board in releasing him to be taken to Wisconsin constituted such acquiescence in his departure from Minnesota as to preclude that State from now reclaiming him as a fugitive from justice.

The petitioner relies upon the case of Re Whittington, 34 Cal App 344, 167 P 404. In that case the petitioner was held in custody under a felony warrant for the commission of a crime in the State of Texas. A requisition was issued by the Governor of California and honored by the Governor of Texas upon a showing that the petitioner had committed murder in California. The case against him in California was subsequently dismissed. Texas thereupon sought his return to the State for trial under the original charges pending against him there. He sought a writ of habeas corpus in California to prevent his return to Texas. The writ was granted and the petitioner discharged. The court held that he was taken out of the State of Texas against his will and under a compulsory process at a time when Texas had full control over him and power to prosecute him for the same offense for which it sought his extradition from California. Under those circumstances it was said that he was not a fugitive from justice because he did not voluntarily leave the state.

The Whittington Case has been cited many times. The cases in which it is cited fall into three main categories. In a few instances it has been cited in support of dicta statements but more often it has been distinguished or criticised. The cases approving it by way of dicta are: Ex parte Hamilton, 41 Okla Crim Rep 322, 273 P 286 and Ex parte Ford, 46 Okla Crim Rep 247, 287 P 1057.

The following cases distinguish the Whittington Case from the situations under consideration: Re Marzec, 25 Cal2d 794, 154 P2d 873; Re McBride, 101 CalApp 251, 281 P 651.

These cases criticise the Whittington Case or at least refuse to follow it: People ex rel. Hutchings v. Mallon, 218 App Div 461, 218 NYS 432; Re Anthony, 198 Wash 106, 87 P2d 302; Re Cohen, 104 NJ Eq 560, 146 A 423; Re Martin, 142 Kan 907, 52 P2d 1196.

Re Whittington is also cited in People ex rel. Barrett v. Bartley, 383 Ill 437, 50 NE2d 517, 147 ALR 935. In that case one McLaughlin was sentenced to an indeterminate term of not to exceed twenty years in the Illinois State Penitentiary. Some two years later while he was in prison the Governor of Illinois honored a requisition of the State of Wisconsin for McLaughlin as a fugitive from justice. An executive warrant was issued authorizing the arrest, detention and extradition of the prisoner from the State of Illinois to the State of Wisconsin. He was tried and convicted in Wisconsin upon the charge for which he was extradited. Upon his release from the Wisconsin prison he went to Ohio where he was convicted and sentenced to the Ohio State Penitentiary for a term of from one to three years. Upon his release from imprisonment in Ohio he was returned to Illinois against his will through extradition proceedings. The Court states that:

". . . the question in the case is, what was the legal effect of the act of the Governor in taking McLaughlin out of the penitentiary on a fugitive warrant and delivering him to the State of Wisconsin, without any reservations, and at a time when he was actually serving a term of imprisonment under the sentence and judgment of the circuit court of Winnebago county."

The Court then reached the conclusion that the waiver of jurisdiction over a fugitive is a prerogative of the Governor and that an extradition warrant takes priority over all State process by which the fugitive is held and the action of the Governor of Illinois in extraditing McLaughlin to Wisconsin while he was serving a sentence in the Illinois Penitentiary operated to waive any further jurisdiction over the person of the prisoner.

The Supreme Court of California in the recent case (1945) of Re Marzec, 25 Cal2d 794, 154 P2d 873, supra, had occasion to consider and distinguish People ex rel. Barrett v. Bartley and Re Whittington from a case in which a prisoner on parole in California was transferred to New Mexico upon a waiver of extradition. After his release from imprisonment in New Mexico, California sought to have him returned to that State for further service of sentence after his California parole was suspended for the failure of the prisoner to comply with its conditions. The prisoner in that case, as does the petitioner in the case before us, claimed that he never was a fugitive from California justice and that when the authorities of California permitted him to be transferred to New Mexico the State of California lost jurisdiction over him and that he was not thereafter subject to extradition proceedings to return him to California. The Court says:

"The petitioner relies upon People ex rel. Barrett v. Bartley, 383 Ill 437, 50 NE2d 517, 147 ALR 935, and Re Whittington, 34 Cal App 344, 167 P 404, to support his contention that the State of California forever waived all claims over him when he left this state for New Mexico. The Bartley Case, although presenting in several respects a situation similar to that of Marzec, is not here controlling because the State of Illinois unconditionally transferred the custody of McLaughlin, then a convict, to the Wisconsin authorities. The prisoner, as in the present proceeding, had been granted a parole to become effective at a future date but without the condition that he was then to be 'subject to detainer' by authorities of another state. Also, when McLaughlin was transferred to Wisconsin he did not go voluntarily upon an agreement to return to prison in the asylum state

after his imprisonment in the demanding state had been completed, nor did he waive extradition. Moreover, in the Bartley Case, the Supreme Court of Illinois concluded that 'McLaughlin was not released on parole' for 'the conditions (admitting him to parole) were never complied with' and, when he was released to the Wisconsin agent, 'there was no mention of parole.' (383 Ill 437, 50 NE2d 519, 147 ALR 935.)

The case of Re Whittington (Cal) supra, was decided upon a record showing facts quite different from those now before the court. There the petitioner, by extradition proceedings, was brought from Texas to California to face a charge of murder. The prosecution dismissed the case, and the Governor of Texas requested his return by extradition. The appellate court held that, as he did not voluntarily leave Texas, he was not a 'fugitive from justice.' But as Marzec went to the New Mexico prison voluntarily under a conditional parole, this state's jurisdiction over him continued. When he later refused to comply with the condition which had been imposed upon him, and his parole was revoked, he became a fugitive from justice within the meaning of the federal extradition statute."

Another California case involving the extradition of a paroled prisoner and distinguishing its facts from that of the Whittington Case is Re McBride, 101 Cal App 251, 281 P 651, supra, in which it is said that:

"The weight of authority and the requirements of effective law enforcement sustain the proposition that one convicted of a crime in a foreign state and removing to another jurisdiction under parole, whether with or without the consent of the paroling authorities, and whose parole is subsequently revoked for a violation of its terms in the foreign jurisdiction, is subject to extradition."

In the case before us the petitioner was paroled to Wisconsin authorities under an agreement which he signed. A Parole Officer of Minnesota testified that it was the custom of the parole authorities of that State to thoroughly explain the provisions of the parole agreement to parolees. We are not impressed with the petitioner's statement that he was not given an oppor-

tunity to read the parole agreement and did not know its contents. Clearly the parole to Wisconsin was not something that he was required to accept. Nevertheless, he did accept it and went to Wisconsin. He did not demand extradition. This case, as are the two California cases last cited, is readily distinguishable from those wherein a prisoner serving sentence in one state is extradited upon an·executive warrant to another state. Ex parte Nabors, 33 NM 324, 267 P 58.

The petitioner came to North Dakota of his own volition without the consent of the authorities of either Minnesota or Wisconsin. He committed forgery here and again in Minnesota and Wisconsin after his parole. Clearly the violation of his Minnesota parole and the revocation thereof by the Parole Board of that State renders him a fugitive from justice. The writ is quashed.

Mr. Chief Justice CHRISTIANSON, deeming himself disqualified, did not participate, HON. FRED JANSONIUS, Judge of Fourth Judicial District, sitting in his stead.

BURR, NUESSLE and BURKE, JJ., and JANSONIUS, Dist. J., concur.