**Bernard STROBLE, Petitioner,**

v.

**Charles E. EGELER, Warden, State Prison for Southern Michigan, Respondent.**

**Civ. A. No. 5–71943.**

United States District Court, E. D. Michigan, S. D.

Feb. 23, 1976.

---

Neal Bush, Detroit, Mich., Haywood Burns, New York City, for petitioner.

A. Michael Leffler, Asst. Atty. Gen., Lansing, Mich., for respondent.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Petitioner Bernard Stroble, presently serving a life sentence for murder at the State Prison of Southern Michigan at Jackson (Jackson), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 raising two claims: (1) that Michigan failed to try him on the murder charge within 120 days after he was brought to Michigan from New York for trial contrary to the provisions of the Interstate Agreement on Detainers, M.C.L.A. 780.601 *et seq.*, and that the holding of the Michigan Court of Appeals that petitioner stayed the running of the 120 day period by filing a petition for a writ of habeas corpus in the United States District Court penalizes him for exercising a federal right and violates his rights to due process and equal protection of the laws; and (2) that Michigan waived its right to imprison petitioner on his murder conviction

when state authorities returned petitioner to New York after he had begun serving his life sentence at Jackson. The respondent has filed a motion to dismiss or alternative motion for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and 56. The record shows the following facts.

In January, 1966, while Stroble was on parole from Jackson, two warrants, one charging assault with intent to kill and the second charging murder, were issued against him in Detroit Recorder's Court. Stroble was arrested by New York authorities in June, 1966, charged with manslaughter in New York, tried, convicted, and incarcerated at the New York State Correctional Facility at Attica. On June 27, 1968, Michigan authorities brought Stroble back to Michigan for trial on the Michigan warrants pursuant to the temporary custody provisions of the Interstate Agreement on Detainers. He was arraigned on both the assault and murder charges on June 28, 1968.

The preliminary examination on the assault charge was held on July 16, 1968. On the same date the preliminary examination on the murder charge was begun but was continued until July 30, 1968. On October 8, 1968, Stroble was found guilty of assault with intent to do bodily harm less than murder. The murder charge was set for trial on October 23, 1968, 118 days after Stroble's arrival in Michigan. On October 11, Stroble filed a pro se habeas corpus petition in the United States District Court for the Eastern District of Michigan claiming that Michigan authorities had kidnapped him from New York. The district court dismissed the petition on November 8, 1968, for failure to exhaust state remedies (Case No. 31870).

On October 23, 1968, petitioner's trial was continued. The record shows that the trial court decided at least one pre-

trial motion subsequent to the October 23rd date, specifically a motion to suppress a confession filed October 26, 1968 and decided November 22, 1968.[1] The trial began on December 16. Stroble was convicted of murder and sentenced to life imprisonment on December 20, 1968. After sentencing on the murder charge but *before* sentencing on the assault charge, state authorities sent Stroble to Jackson with documents indicating that he was a technical parole violator with a new life sentence. On February 5, 1969, he appeared in Recorder's Court for sentencing on his assault conviction, and a few days later Detroit authorities returned him to New York.

Stroble appealed his conviction to the Michigan Court of Appeals on the ground that the trial court lacked jurisdiction to try him for murder because his trial had not begun within 120 days after his arrival in Michigan as provided by the Interstate Agreement on Detainers. The court held (1) that the filing and pendency of Stroble's habeas corpus petition in the United States District Court operated to stay the application of the 120 day period; (2) that there was good cause for the October 23rd adjournment; and (3) that petitioner's rights had not been violated under the Detainer Agreement when he was brought to trial on one charge within 120 days of his arrival in Michigan. *People v. Stroble*, 31 Mich. App. 94, 187 N.W.2d 474 (1971). The Michigan Supreme Court subsequently denied leave to appeal.

In March, 1974, petitioner's New York sentence was reduced, making him eligible for parole. New York authorities subsequently notified Michigan authorities that petitioner would be available for parole to his Michigan warrants and also that he faced trial in Buffalo, New York for charges arising out of his alleged participation in the Attica riots.[2]

1. The record indicates that the prosecution gave the defendant notice of its intention to use a confession on July 22, 1968.

2. In June, 1974, a Michigan Department of Corrections official wrote New York officials

that Michigan did not have jurisdiction over Stroble. However, this error was corrected by letter in September, 1974.

Petitioner was acquitted of several "Attica" charges in 1975. In July, 1975, bail was set for the remaining charges, and petitioner was returned to Michigan and incarcerated at Jackson. This action followed.

Michigan and New York are both signatories to the Interstate Agreement on Detainers which establishes procedures for member states to effect the disposition of out of state criminal charges pending against persons incarcerated in state institutions. M.C.L.A. 780.-601–.608; C.P.L. § 580.20 *et seq.* (McKinney). The purpose of the Agreement is to encourage the expeditious and orderly disposition of untried criminal charges pending against state prisoners in other jurisdictions through the use of cooperative procedures because outstanding criminal charges and difficulties in securing speedy trials on out of state charges produce uncertainties which obstruct prisoner treatment and rehabilitation. Art. I.

Art. IV(c) of the Agreement provides that when a prisoner is sent from one state to another for purposes of trial, he shall be brought to trial within 120 days after his arrival in the receiving state, but the trial court may grant any necessary and reasonable continuance for good cause shown in open court with the prisoner or his counsel present, and this time does not count in determining the 120 day period. When the prisoner is not brought to trial within the 120 day period as extended, the court should enter an order dismissing such charge. Art. V(c). The court may toll the time periods established by the Agreement for as long as the prisoner is unable to stand trial. Art. VI(a).

An out of state prisoner in temporary custody shall be lodged in a jail or a facility regularly used to house individuals in pre-trial custody. He should be returned to the sending state as soon as possible consonant with the purposes of the Agreement. Art. V(d), (e). The prisoner remains in the legal custody of the sending state except for the limited purpose for which temporary custody was awarded, *i. e.* to permit trial on pending charges. Art. V(d), (g). The Agreement also provides that its provisions shall be construed liberally to effectuate its purposes to encourage the expeditious and orderly disposition of untried criminal charges in foreign jurisdictions. Art. IX.

## I

Petitioner's first claim is that Michigan's refusal to dismiss the murder charge when his trial did not begin within 120 days from the date he was brought to Michigan denies him a federally protected right, and that the holding of the Michigan Court of Appeals in *People v. Stroble, supra,* that petitioner stayed the running of the 120 day period by filing a habeas corpus petition in the United States District Court penalizes petitioner for filing his habeas corpus petition and violates his rights to due process and equal protection of the law. This court agrees that a prisoner's rights under the Interstate Agreement are federal rights.

The United States Constitution provides that Congress must approve interstate compacts among the states. Art. I, § 10, Cl. 3. Section 112(a), Title 4, U.S.C. gives states advance Congressional approval to set up interstate agreements to improve law enforcement. The construction of interstate compacts, sanctioned by Congress under Article I, Section 10, presents a federal question. *Petty v. Tennessee-Missouri River Commission,* 359 U.S. 275, 279, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); *Dyer v. Sims,* 341 U.S. 22, 26, 71 S.Ct. 557, 95 L.Ed. 713 (1951); *Delaware River Commission v. Colburn,* 310 U.S. 419, 427, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940). Interstate compacts sanctioned by Congress under the Constitution give rise to federal titles, rights, privileges and immunities. *United States ex rel. Esola v. Groomes,* 520 F.2d 830, 841 (3rd Cir. 1975) (Garth, J., concurring); *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 507 F.2d 517, 521 (9th Cir.), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654

(1975). Thus, a state prisoner who alleges that he has been denied rights under the Interstate Agreement on Detainers meets the requirements of 28 U.S.C. § 2254 which provides for habeas corpus jurisdiction for a state prisoner only when he alleges that he is in custody in violation of the Constitution or the laws of the United States upon exhaustion of state remedies. *Wingo v. Ciccone,* 507 F.2d 354, 357, n. 11 (8th Cir. 1974); *Grant v. Hogan,* 505 F.2d 1220, 1223 (3rd Cir. 1974).

■ Insofar as *People v. Stroble, supra,* is based on a holding that the pendency of petitioner's habeas corpus petition stayed the 120 day period specified in the Interstate Agreement on Detainers, the Michigan Court of Appeals erred. To imply *after the fact* that the period of time involved in the filing and disposition of a habeas corpus petition prejudiced the petitioner in asserting other important rights, in this case the right to be tried within 120 days under the Agreement, would tend to chill the use of the Great Writ and cannot be sanctioned. Prisoners must be free to use the writ without fear of repercussions. If the delay in trying petitioner on the murder charge could be explained only on the basis of the pendency of his habeas proceeding, his prosecution on murder charges would be untimely and the petitioner would be ordered discharged from custody. However, there are other questions this court must resolve.

The facts as alleged in the pleadings filed in this cause show: (1) that petitioner was tried on the assault charge within 120 days of his arrival in Michigan; (2) that his trial for murder, originally scheduled for October 23, 1968, was scheduled within the 120 day period; (3) that the preliminary hearing had been continued for 14 days in July; (4) that petitioner's counsel filed a motion to suppress on October 26, well within the 120 day period as extended; (5) that this motion involving an alleged confession was decided on November 22; (6) that the trial date was continued on October 23 and that petitioner was tried on December 16; finally (6) that the Court of Appeals held all of this to be good cause under the Interstate Agreement on Detainers.

One narrow issue presently before the court concerns who must show whether the requirements of the Interstate Agreement on Detainers as to granting continuances have been met.[3]

■ A petitioner for a writ of habeas corpus must normally establish that his conviction and confinement are invalid. *Ricon v. Garrison,* 517 F.2d 628 (4th Cir. 1975); *Clayton v. Haynes,* 517 F.2d 577 (4th Cir. 1975); *Faught v. Cowan,* 507 F.2d 273 (6th Cir. 1974), *cert. denied,* 421 U.S. 919, 95 S.Ct. 1583, 413 L.Ed.2d 786; *Webster v. Estelle,* 505 F.2d 926 (5th Cir.), *cert. denied,* 421 U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975). Petitioner has not established that continuances were granted in violation of the statutory requirements, but rather that the record does not affirmatively show that the statutory requirements were met. State court proceedings, however, are presumed correct in the absence of evidence to the contrary. In *Faught v. Cowan, supra,* the court stated that it cannot assume flagrant irregularities in state trial proceedings. *See also, Groppi v. Leslie,* 436 F.2d 326, 329 (7th Cir. 1970), *rev'd on other grounds,* 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972).

In the instant case petitioner has not alleged that he was not present in court on any of the days that continuances were granted, nor has he filed any affidavits indicating that counsel was not present on those dates or that such continuances were not reasonable or necessary. Thus, if it were necessary to de-

---

**3.** Petitioner's counsel has filed an affidavit in response to the motion for summary judgment indicating that he has examined the trial record and that such record does not show that the continuances granted in the trial proceedings were granted upon motions for adjournments nor does the record show that there were pending motions on the date originally set for the murder trial.

termine the *fact* of petitioner's or his counsel's presence in open court as required by the compact, this matter would be set for an evidentiary hearing. At that hearing the court would determine if petitioner had met his burden of proof with regard to these matters. However, this factual determination is not essential. Assuming petitioner could meet his burden of proof with regard to the above, the court still would have to decide if the petitioner should be released in the light of the following relevant considerations.

■ The purpose of the Interstate Agreement is to provide orderly and expeditious disposition of untried criminal charges, but the Agreement is silent as to the proper procedure when an out of state prisoner faces multiple criminal charges in one jurisdiction. If petitioner's assault trial had lasted 121 days and no formal continuance had been granted, is it reasonable to assume that petitioner could not have been tried on the murder charge? Such a result would be manifestly absurd in view of the purpose of the Agreement. Therefore, this court agrees with the holding of the Michigan Court of Appeals that where petitioner was tried on one of the criminal charges pending against him within the 120 day period, his rights under the Agreement were not violated when his second trial did not start within the *same* 120 day period. Petitioner's second trial began within a reasonable period after the completion of the first trial.[4]

## II

Petitioner's last claim is that Michigan waived its right to imprison him on his murder conviction by sending petitioner to Jackson on December 20, 1968 contrary to the provisions of the Interstate Agreement and then returning him to New York after sentencing on his assault conviction on February 5, 1969. The Interstate Agreement provides that an out of state prisoner temporarily present in the state for purposes of trial be housed in a jail or other pre-trial detention facility. The Agreement also clearly provides that *legal* custody of the prisoner remains with the sending state. Thus, a prisoner in temporary custody continues serving time on his original sentence.

■ The record is clear that Michigan authorities erred in sending petitioner to Jackson on December 20th rather than to a jail or temporary facility. Moreover, respondent's answers to Interrogatories indicate that Michigan authorities considered Stroble to have begun serving his murder sentence at Jackson on that date. Petitioner relies on *People ex rel. Barrett v. Bartley,* 383 Ill. 437, 50 N.E.2d 517 (1943), in support of his claim that Michigan voluntarily released him to New York in February, 1969, and thereby waived service of his sentence. *Bartley* held that where a prisoner begins serving a sentence in one state which interrupts service of the sentence to surrender the prisoner to another state for service of another sentence, the sending state thereby relinquished jurisdiction over the prisoner, in effect pardoning the prisoner. *Bartley* is inapplicable since Michigan received temporary custody of Stroble from New York only for the purpose of trial. Interstate

---

**4.** State courts have routinely dismissed pending criminal charges against prisoners incarcerated in other jurisdictions because the prosecution failed to bring them to trial within 180 days after they made a written demand for trial as provided by Article III of the Interstate Agreement. *Pittman v. State,* 301 A.2d 514 (Del.Super.Ct.1973); *Hoss v. Mason,* 46 N.J. 526, 218 N.E.2d 158 (1966); *People v. Esposito,* 201 N.Y.S.2d 83 (Queens County Ct.1960). In *United States v. Mason,* 372 F.Supp. 651, 652 (N.D.Ohio 1973), the court held that where the prisoner had made a request for a disposition of federal charges pending against him under Article III, the 180 day period continued to run at those times when the petitioner was incarcerated in his home state available for trial. During such time as the prisoner was held in the temporary custody of another state, the 180 day period was tolled. Following the rationale of this case, while petitioner and the state were preparing for trial on the assault charge, the 120 day period should be considered tolled on the murder charge even though both charges were pending in the same state. While petitioner was preparing for trial on the assault charge, he should have been considered unavailable for trial on the murder charge.

Agreement on Detainers, Art. V(d). Michigan did not have legal custody and throughout Stroble's stay in Michigan, he was serving his New York sentence. Thus, the respondent's admission that Stroble began serving his life sentence at Jackson on December 20, 1968 is irrelevant.

This court cannot find that Michigan's technical violation of the Agreement, *i. e.* housing petitioner at Jackson for a two month period, divested New York of legal custody over Stroble. To adopt such a rigid view would violate the purpose of the Interstate Agreement. The signatories to the Agreement did not intend to let technical violations operate to release duly convicted prisoners from serving the balance of their sentences, since Article IX of the Agreement provides that it should be liberally construed to effectuate its purposes. The Agreement is intended to facilitate interstate movement of prisoners to clear up pending charges in other jurisdictions. States would never utilize the Agreement if they risked losing jurisdiction over a prisoner by so doing. The court concludes that Michigan's technical violation of the Agreement, while not to be condoned, was insufficient to constitute a waiver of Michigan's right to imprison petitioner upon completion of his New York sentence.

The respondent's motion to dismiss or in the alternative motion for summary judgment is granted.

So ordered.