Com. of Pa. *v.* Stanley P. Ashe.

Argued May 3, 1934.

Before TREX-LER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Morris M. Berger,* and with him *Allen H. Kerr,* for appellant.—The honoring of the requisition was, both at common law, as well as under the Act of May 3, 1933, P. L. 249, a waiver of the jurisdiction of Pennsylvania over the prisoner, so as to render him immune to further imprisonment in Pennsylvania: In Re Opinion of Justices, 201 Mass. 609; People ex rel. Gallagher v. Hagan, 69 N. Y. Supp. 475; Roberts v. Reilly, 116 U. S. 80; People v. Klinger, 319 Ill. 276; In Re Hess, 5 Kansas Appeals, 763; Hanson v. Edwards, 240 S. W. 489 (Missouri Appeals).

*Joseph A. Langfitt, Jr.,* and with him *A. L. Edwards,* Deputy Attorney General, and *William A. Schnader,* Attorney General, for appellee.

OPINION BY PARKER, J., July 13, 1934:

The relator in this petition for habeas corpus, Louis J. Kamons, was convicted in the Court of Oyer and Terminer of Beaver County, Pennsylvania, on a charge of arson and was by that court, on November 26, 1932, sentenced to undergo an imprisonment in the Western Penitentiary of this state for a period not less than five years nor longer than ten years. While undergoing such sentence, and on the requisition of the governor of the state of Ohio, he was, on June 3, 1933, extradited to the state of Ohio where he was charged with murder. He was there tried and acquitted when the governor of Ohio returned him to the Western Penitentiary. On his return he presented to the Court of Common Pleas of Allegheny County a petition for a writ of habeas corpus, alleging that he was improperly detained in the Western Penitentiary and assigning as grounds therefor that

the extradition to the state of Ohio was a waiver by the Commonwealth of Pennsylvania of all right to hold him for further imprisonment and amounted to a pardon for the offense committed in Pennsylvania.

By Article IV, Section 2, of the Constitution of the United States, it is provided as follows: "A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive Authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime." Congress by Act of February 12, 1793, R. S. §5278, provided the procedure to be followed, and the Commonwealth of Pennsylvania by Act of April 21, 1927, P. L. 327, as amended by Act of May 3, 1933, P. L. 249 (19 PS 121), provided not only for the execution upon the part of this Commonwealth of the provision of the federal constitution, but gave to the governor the right to honor requisitions for extradition where the fugitive should be at the time imprisoned here. That act now provides that, subject to the provisions of the constitution and acts of Congress, it shall be the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime who has fled from justice and is found in this state. "Provided, If the executive authority of any other state or district requests the extradition of any person charged in that state with murder, and that person is imprisoned in a penal institution or jail of this state for a term less than imprisonment for life, the Governor of this state may deliver him or her up to the executive authority of the demanding state or district for the purpose of trial in said state or district: Provided, however, That prior to the removal of the person from this state, the execu-

tive authority of the demanding state or district shall have agreed that the person so delivered up is to be returned immediately to this state, at the cost of the demanding state or district, to serve the balance of his or her term of imprisonment in the event of his or her acquittal in the demanding state, or in the event of his or her conviction in such state of manslaughter, or any degree of murder the punishment for which is less than death or imprisonment for life.''

If at the time of a demand for extradition the accused is held on a criminal charge in the state where he is a fugitive, the provision of the federal constitution for extradition does not require that he be surrendered until after the judgment of that state is satisfied: Taylor v. Taintor, 16 Wall. 366, 21 L. ed. 287; Opinion of Justices, 201 Mass. 609, 24 L. R. A. (N.S.) 799, 89 N. E. 174; Roberts v. Reilly, 116 U. S. 80, but the executive of the asylum state may waive the right of that state to retain the prisoner, and may surrender him to the demanding state: Roberts v. Reilly, supra; People v. Klinger, 319 Ill. 275, 149 N. E. 799. Also, see note to People v. Klinger, 42 A. L. R. 585. When the fugitive is subject to a criminal charge in the state in which he has taken an asylum, he is, if delivered to the state from which he is a fugitive, handed over not by virtue of a positive requirement of a federal constitution, but as a matter of comity between sister states. Frequently, in the cases upholding the removal of a fugitive from a state in which he is subject to a criminal charge, it is said that the state delivering him may waive its claim. In Roberts v. Reilly, supra (p. 97), is an example of such language: ''It is none the less true that the offense charged is also a crime in New York against its laws, and the state of Georgia may choose to waive the exercise of its jurisdiction by surrendering the fugi-

tive to answer to the laws of New York." The counsel for the petitioner in this case has seized upon this expression and assumed its meaning to be that when, under such circumstances, a prisoner is surrendered to another state, the state in which he had been held loses the right, under any circumstances, to insist upon further punishment, and even though he may be acquitted in the state to which he is extradited. In one case, State v. Saunders, 288 Mo. 640, 232 S. W. 973, the appellate court of Missouri, in sustaining its right to try a prisoner who had been extradited while under sentence in the state of Iowa, used the following language: "The question arises, therefore, as to whether it may not properly be regarded in the nature of a pardon. It released the appellant from the punishment he was undergoing in Iowa, in order that he might be prosecuted for an offense in Missouri. Notwithstanding the condition of this release, we are of the opinion that it became absolute upon his surrender to the authorities of this state. If so, then it was unquestionably in the nature of a pardon."

In compliance with the extradition act of this Commonwealth, when the prisoner was delivered to the agent of the state of Ohio, the governor of the state, on behalf of that state, agreed in exact accord with our act of assembly that, in consideration of granting the extradition of Kamons to be tried in that state on a charge of murder of the first degree, should he be acquitted of that charge or found guilty of an offense for which, under the laws of the state of Ohio, the punishment is less than death or imprisonment for life, he would immediately be returned to the state of Pennsylvania to complete his sentence. Kamons having been acquitted, the prisoner was duly returned to this state in accordance with the agreement and the terms of our act of assembly. As we interpret the language of the United States Supreme Court and

the appellate courts of other states when they used the expression that the state of the asylum of the fugitive waived its rights, that meant that where the fugitive was charged with a crime in the state of the asylum but had not yet been tried, the state waived its right to proceed against him first. Where a fugitive is under sentence at the time of his extradition, he is delivered to the other state for trial as a matter of comity, and it becomes a matter of agreement between the executives of the states, made previously or later, as to what shall afterwards be done with the prisoner. The definition of comity as given by Mr. Justice HARLAN in Pettibone v. Nichols, 203 U. S. 192, 211, throws light on the subject: "By comity nothing more is meant than that courtesy on the part of one state, by which within her territory the laws of another state are recognized and enforced, or another state is assisted in the execution of her laws. From its nature the courts of the United States cannot compel its exercise when it is refused; it is admissible only upon the consent of the state, and when consistent with her own interests and policy." Undoubtedly, the Commonwealth of Pennsylvania waived rights the extent of such waiver was limited by the agreement of the executives that if Kamons was acquitted on the charge of murder, he should be returned to the state of Pennsylvania. He has not yet satisfied the judgment of the court of Beaver County, and until he has done so he is not entitled to a discharge.

The appellant relies principally upon the principles stated in the case of State v. Saunders, supra, where in an obiter dictum it was said that such an exercise of comity as we have here is in the nature of a pardon. An examination of that case discloses that it was decided by a divided court, the members of which differed in their reasoning, but did agree upon one conclusion, to wit, that the fact that the defendant in

that case had not completed his sentence in Iowa was not a bar to his trial in Missouri. While we are not impressed with the reasoning in that case, there is a controlling reason why that decision is not applicable to the case we are considering. By Article IV, Section 9, of the constitution of this Commonwealth, in defining the powers of the governor, it is provided: "He shall have power to remit fines and forfeitures, to grant reprieves, commutations of sentence and pardons, except in cases of impeachment; but no pardon shall be granted, nor sentence commuted, except upon the recommendation in writing of the lieutenant governor, secretary of the Commonwealth, attorney general and secretary of internal affairs, or any three of them, after full hearing, upon due public notice and in open session, and such recommendation, with the reasons therefor at length, shall be recorded and filed in the office of the secretary of the Commonwealth." The governor had no authority or power to pardon this petitioner.

Again, we are not necessarily concerned with the manner or process by which this petitioner was removed from this state for trial in Ohio or how he was returned so far as affects the result, for the fact remains that Kamons was sentenced by a court of competent jurisdiction to undergo an imprisonment; he is in the penitentiary to which he was committed, and he has not yet satisfied the judgment of the court. It is not necessary to consider how he got out of the state or how he came back. In an early decision in this state by Chief Justice GIBSON, Dows' Case, 18 Pa. 37, a fugitive from Pennsylvania was arrested in Michigan, and he was brought back into this state for trial against his will and without legal process. It was held that this did not affect the right of the state to try him. The United States Supreme Court held likewise in Pettibone v. Nichols, supra, Adams

126

v. New York, 192 U. S. 585, and in numerous other cases. The remarks of that eminent jurist in the Dows' Case (p. 39) are pertinent in the present inquiry. "A sovereign state is doubtless bound to fight the battle of its citizen, when he has his quarrel just; but it is not bound to maintain him against demands of foreign justice from which he has fled...... The constitutional provision was not devised for the benefit of the fugitive......an arrest at sufferance would be useless if its illegality could be set up by the culprit."

When by comity the states assist each other in the apprehension of criminals and the suppression of crime, it is not done in the interest of the criminal and the rights of felons are not paramount to those of the Commonwealth. If a defendant may be tried and sentenced notwithstanding the fact that he has been brought into the state by force, without legal process and against his will, certainly a convicted defendant who has not completed a legal sentence may be required to serve his term even though a sister state was permitted to try him during the term of his sentence. This Commonwealth is jealous of the rights of defendants who are charged with crimes, and the courts must at all times see that defendants have a fair trial by due process of law, but it is not the policy of this state to relieve from punishment guilty persons upon technical contentions.

The judgment of the court below is affirmed.