47 N.J. Super. 36 (1957)
135 A.2d 224
FRANK RAU, WARREN DAVIDSON, JAMES KIERNAN AND RONALD K. KRAMER, PLAINTIFFS-APPELLANTS,
v.
LLOYD McCORKLE, WARDEN, NEW JERSEY STATE PRISON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 23, 1957.
Decided October 11, 1957.
*38 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Frank Rau, Mr. Warren Davidson, Mr. James Kiernan and Mr. Ronald K. Kramer, plaintiffs-appellants, pro se.
Mr. Grover C. Richman, Jr., Attorney-General of New Jersey, for defendant-respondent (Mr. Eugene T. Urbaniak, Deputy Attorney-General, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiffs are under confinement in State Prison pursuant to sentences imposed after conviction or plea for a series of crimes in several counties, apparently committed as a group including one other person. They appeal from a dismissal of a writ of habeas corpus adjudged in the Law Division, Hudson County. Rau v. McCorkle, 45 N.J. Super. 191 (1957). Judge Duffy's reported opinion comprehensively recites the factual background, and we shall not repeat it at length. For present purposes it will suffice to say that plaintiff's grievance arises out of a written agreement between Governor Meyner and Governor Dewey of New York, executed by Governor Dewey March 20, 1954 and by Governor Meyner March 29, 1954, pursuant to which plaintiffs were extradited to New York for trial on criminal charges pending against them there, on the express condition that after prompt trial in New York they should be returned promptly to the New Jersey State Prison "to await trial in the State of New Jersey." The extradition is described in the agreement as being effectuated "before the trial" of the plaintiffs. As a matter of fact, by March 29, 1954 three of them had pleaded non-vult, and the other, Kramer, had been convicted, in Hudson County, and three *39 of them had been sentenced to prison terms. All of them except Rau had other indictments pending against them in Hudson County, and all were involved in crimes in other counties for which they were later sentenced.
After a previous unsuccessful habeas corpus proceeding plaintiffs were extradited to New York July 29, 1954. They pleaded guilty there, were sentenced January 30, 1956 after the adverse determination of habeas corpus proceedings in that state, and were redelivered to New Jersey February 1, 1957.
The first point argued is that the State of New Jersey had no right under any New Jersey statute to have the plaintiffs returned. It may be conceded that no specific provision of our extradition statute, N.J.S. 2A:160-1 et seq., in terms prescribes the procedure effectuated in this case. N.J.S. 2A:160-10 provides that where the person sought to be extradited is charged in the other state with murder and is imprisoned in this State for a term less than life he may be turned over to the demanding state for trial subject to prior agreement by that state to return him here to complete his term should he be acquitted or sentenced to less than death or life imprisonment. N.J.S. 2A:160-27 provides that in the case of a person against whom a criminal prosecution is pending here the Governor may in his discretion surrender him to another state or hold him until after trial, discharge or conviction and punishment here. N.J.S. 2A:160-33 (set forth at 45 N.J. Super. at page 196) provides that in the case of a person imprisoned or held for prosecution in another state, the Governor may agree with the executive authority of the other state for the extradition of the person here on condition that he be returned to the other state after his prosecution here. While we agree with plaintiffs that none of these sections expressly cover the instant situation, it is obvious that what was done here by the New Jersey Chief Executive is the converse of what is permitted under the section last referred to. New York has the identical statutory provision, which expressly authorized the entry into the *40 agreement here involved by the Governor of that state. N.Y. Code of Criminal Procedure, § 832. It is therefore clear, particularly since the statutory provisions are a part of section 5 of the Uniform Criminal Extradition Act and were intended to have reciprocal operation in the states adopting it, that what was done here was in nowise offensive to New Jersey policy notwithstanding the legislative hiatus.
In any event, however, plaintiffs' underlying assumption that the cooperative disposition of the claims against them by the authorities of New York and New Jersey was required to be founded in affirmative statutory authorization enacted in both States is without justification. Principles of comity as between sovereigns amply warranted New Jersey, which had possession of and jurisdiction over plaintiffs in respect of crimes they were convicted of and charged with here, to surrender them to New York for prosecution on charges pending against them there conditionally upon their redelivery here after disposition of the charges in New York. 22 Am. Jur., Extradition, § 64, p. 302; see Ex Parte Lovingood, 58 Okla. Cr. 336, 53 P.2d 290 (Cr. Ct. App. 1936); Werntz v. Looney, 208 F.2d 102, 104 (10 Cir. 1953); Lunsford v. Hudspeth, 126 F.2d 653, 655 (10 Cir. 1942). The arrangement thereby consummated served the public policy that plaintiffs should have the benefit of their constitutional right to a speedy trial or other disposition of the New York charges which would take place at a time when the evidence to be relied on by both sides was fresh, at the same time securing to New Jersey its right to exact prior satisfaction from plaintiffs for their depredations here. Ibid. In that procedure plaintiffs can point to no deprivation or impairment of any right of substance.
The circumstance that the agreement of extradition was not accurate in its recitals as to the status of plaintiffs' prosecutions in this State is entirely immaterial as the references were merely descriptive, not conditional, and plaintiffs were in nowise prejudiced thereby.
If New Jersey's Governor had the power, independent of statute, to arrange for plaintiffs' return to this State after *41 honoring a demand for extradition in the manner here done, nothing in the extradition statute can be taken to abrogate it as the act specifically provides that nothing therein contained "shall be deemed to constitute a waiver by this state of its right * * * to try such demanded person for crime committed within this state, or of its right * * * to regain custody of such person by extradition proceedings or otherwise * * *"; also, that no proceedings "had under this article which result in * * * extradition" shall be deemed "a waiver by this state of any of its rights, privileges or jurisdiction in any way whatsoever." (Emphasis added.) N.J.S. 2A:160-8.
It is also argued that the extradition to New York constituted a pardon, or at least a waiver of jurisdiction, by the Governor of New Jersey. These contentions are patently baseless. They assume the absence of power to do what was done, and we have held that position to be devoid of merit. Not only do the cited portions of N.J.S. 2A:160-8 negate any implication of waiver of jurisdiction or pardon, but the express reservation of the right of return of the prisoners in the agreement is conclusive contra. See 67 C.J.S. Pardons § 10, p. 573; Ex Parte Lovingood, supra; Adams v. Waters, 94 Okla. Cr. 428, 237 P.2d 914 (Cr. Ct. App. 1951); Samet v. McLeod, 291 P.2d 836 (Okla. Cr. App. 1955). Plaintiffs rely on People ex rel. Barrett v. Bartley, 383 Ill. 437, 50 N.E.2d 517, 147 A.L.R. 935 (Sup. Ct. 1943), but the case is not in point, as there the instrument of extradition contained no reservations by the extraditing state. And see Commonwealth, ex rel. Kamons v. Ashe, 114 Pa. Super. 119, 173 A. 715 (Sup. Ct. 1934), cited in the Bartley case (50 N.E.2d at page 520). The other cases cited by plaintiffs are either inapplicable on the facts here presented, overruled by later authority, or, where authoritative and comparable, are based upon what we consider attenuated reasoning without justification either in public policy or in any fair requirement of substantial justice for the prisoners involved. See Annotation, 147 A.L.R. 941 (1943).
*42 Even if the surrender of plaintiffs to New York were to be regarded as technically effective to divest New Jersey of jurisdiction over them, so as, for example, to obviate extradition to New Jersey if they had found their way from New York to another state (as to which we express no opinion), the fact of present possessory jurisdiction by New Jersey renders the matter moot, as habeas corpus lies only where the applicant is entitled to immediate release. In re Kerschner, 9 N.J. 471 (1952). Plaintiffs are not so entitled. Each of them owes the State long penal service.
Plaintiffs charge that the manner in which they have been dealt with constitutes a denial of due process. We do not agree. They have been deprived of no basic procedural right or constitutional protection. Nothing in their apprehension, arraignment, conviction, sentencing, extradition to New York or return here for service of their sentences can be said to offend any principle or universal sense of justice or fair play.
Judgment affirmed.