Albert A. Oppido, J.
This is a motion by the defendant, Willie Singleton, to dismiss the indictment for want of prosecution, pursuant to section 668 of the Code of Criminal Procedure.
The record indicates that the defendant was indicted in Nassau County, New York, on the 17th day of February, 1959 for the crimes of robbery, in the first degree; grand larceny, first degree (two counts); grand larceny, in the second degree; and assault, in the second degree; all of which acts were allegedly committed by the defendant in concert with three others on or about December 31, 1958.
The defendant’s affidavit in support of this motion indicates that, on or about January 2, 1959, he was arrested in Pittsboro, North Carolina, on a charge of robbery. In the Spring of 1959, the defendant, Willie Singleton, was convicted of robbery in North Carolina, after which a prison term of not more than 12 years, but not less than 9 years was imposed upon him. The defendant, Singleton, remained in Caledonia Prison Farm, Halifax, North Carolina, until extradited to Nassau County in the latter part of March, 1965 and he was arraigned upon the instant indictment on April 1, 1965. Nassau County authorities lodged a detainer warrant for the arrest of the defendant on the instant charges at the Caledonia Prison Farm in January, 1959, but did *812 not attempt to return Singleton for trial until March, 1965 — a period of more than six years. The defendant alleges that during his incarceration in North Carolina, he was at all times able and willing to stand trial and that he did not waive his right to a speedy trial by any action on his part. Moreover, the defendant alleges that he made efforts to be returned to this State for trial. For example, he claims that, in either 1962 or 1963, he wrote to former Governor Sanford of North Carolina asking to be returned to New York State for trial. Thereafter, G-overnor Sanford replied that North Carolina would be willing to release the defendant because of his good prison record, but added that such a step could not be taken without a formal request from the State of New York. Subsequently, the defendant wrote to the G-overnor of New York State asking to be returned to Nassau County for trial, and he was thereafter informed by the G-overnor’s office that the request had been forwarded to the Nassau County District Attorney’s office.
The defendant further alleges that he wrote four or five letters to the Nassau County District Attorney’s office requesting a trial, but he was informed by that office that he would have to wait until his release from prison in North Carolina to be returned for trial because the State of North Carolina was not a signatory to the Agreement on Detainers (Code Crim. Pro., § 669-b). On this subject, it might be noted that the defendant has not supported his claims respecting the request he made for a speedy trial by any type of documentation.
The facts, as alleged by the defendant, are not controverted by the affidavit in opposition to the motion, which was sworn to by an Assistant District Attorney. However, the affidavit does allege that a codefendant, Lewis Quiller, who was imprisoned with Singleton in the North Carolina case, frequently wrote to the office of the District Attorney of Nassau County requesting that he be brought to trial on the instant indictment. Sometime prior to July 1,1963, an Assistant District Attorney, other than the one who swore to the affidavit, “ communicated with the New York State G-overnor’s Office concerning the possibility of instituting a proceeding to bring the defendant to New York State for trial ”. The Assistant District Attorney in question “ was informed” that the Governor could not bring the defendant from North Carolina to New York and he so notified the codefendant, Quiller. The affidavit in opposition also indicates that a formal motion by Quiller to dismiss the indictment for lack of prosecution was denied by the Nassau County Court on *813 November 20, 1963, apparently on the ground that North Carolina was not a signatory to the Agreement on Detainers.
Section 668 of the Code of Criminal Procedure, in essence, provides that an unreasonable delay in bringing an indictment to trial must result in the dismissal of the said indictment unless the prosecution establishes “ good cause ” for the delay. Since the delay in the instant case has been so long, the fact of its being unreasonable manifestly admits of no controversy. Thus, it would appear that the instant application must be granted unless incarceration in an out-of-State prison constitutes ‘ ‘ good cause ” for the delay in prosecution.
In an effort to show the existence of “ good cause ” in the instant case, the affidavit in opposition urges two arguments:
1. North Carolina is not a signatory to the Agreement on Detainers (Code Crim. Pro., § 669-b); and
2. The case of People v. Brandfon (4 A D 2d 679 [2d Dept., 1957]) held that any incarceration in a foreign State prison constituted “ good cause ” for a delay in prosecution.
Both the aforesaid contentions were considered by this court in People v. Winfrey (44 Misc 2d 140 [Nassau County Ct., 1964]) wherein it was held that incarceration in a foreign State prison does not, per se, constitute “ good cause ” for a delay in prosecution. In that case, after reviewing precedent decisional law, this court pointed out that the burden of bringing an accused to trial is upon the prosecution (People v. Prosser, 309 N. Y. 353 [1955]), and that statutes enabling persons incarcerated in prisons within New York State or other States which are signatories to the Agreement on Detainers (Code Crim. Pro., § 669-b), to request a disposition of criminal charges against them, in no way alleviate the prosecution’s burden (People v. Segura, 6 N Y 2d 936 [1959]; People v. Bryant, 12 N Y 2d 719 [1962]). In that connection, then, it is irrelevant for present purposes whether or not the defendant, Singleton, himself made efforts to bring the instant indictment to trial, as he has asserted in his unsupported allegations. Moreover, in Winfrey (supra), this court expressed the opinion that the holding in People v. Brandfon (supra), must be viewed as erroneous in light of the case law, which developed thereafter. More specifically, Brandfon, in reaching the conclusion that incarceration in a foreign State constituted “ good cause ” for delay in prosecution, relied upon a decision which was later reversed on that very point (People v. Peters, 198 Misc. 956, revd. 16 A D 2d 171 [3d Dept., 1962]). Furthermore, after the Brandfon decision, the appellate courts of this State held that incarceration in a Federal *814 penitentiary, whether within or without the State of New York, did not constitute good cause for failure to bring a case to trial within the meaning of section 668 of the Code of Criminal Procedure, because the prisoners involved therein could have been brought to trial by virtue of a Federal statute (U. S. Code, tit. 18, § 4085), which permits the Attorney General to release Federal prisoners for trial in State courts, if he deems it to be in the public interest. (People v. Piscitello, 7 N Y 2d 387 [1960]; People v. Newcombe, 18 A D 2d 1087 [2d Dept., 1963]; People v. Peters, 16 A D 2d 171, supra.) For these reasons, this court viewed itself bound to reject the Brandfon decision and to follow the mandate emerging from later cases to the effect that an accused person must be returned from other jurisdictions for trial when there is a statutory device available for effecting that result. Finally, this court, in Winfrey, pointed out that the extradition statutes of New York and Alabama constituted such a statutory device and concluded that, since the prosecution had made no effort to return the accused for trial, the indictment had to be dismissed.
The affidavit in opposition to the instant motion totally fails to demonstrate any reason why this court erred in rejecting the prosecution’s arguments now under discussion in the Winfrey case, and, consequently, this court again rejects these contentions.
A further word needs to be said about this court’s holding in Winfrey. There, by alluding to the fact that both Alabama and New York had enacted extradition laws, this court did not intend to imply that a statute common to both the asylum State and New York State must exist in order for the doctrine enunciated in Winfrey to be operative. For one thing, this court does not view the Piscitello decision as applying to situations where a return to New York for trial could be effected by virtue of a statute, but feels rather that the true import of that case is to require prosecutors to utilize any method whereby the desired result could be achieved. As a practical matter, it is possible for New York State authorities to return accused persons to this State for trial from another State jurisdiction by the device of executive agreement. For, as a matter of comity, the executive authorities of various States may agree that a prisoner serving a sentence in the asylum State will be surrendered for trial to the demanding State on condition that the said prisoner be returned to the asylum State after trial, without either State waiving jurisdiction over the prisoner. (Ponzi v. Fessenden, 258 U. S. 254 [1922]; Hayward v. Looney, 246 F. 2d 56 [C. A. *815 10th, 1957]; Rau v. McCorkle, 47 N. J. Super. 36 [1957]; 22 Am. Jur., Extradition, § 64.) Accordingly, the section of New York’s extradition law (Code Crim. Pro., § 832) empowering the Governor to agree with the executive authority of a foreign State that a person serving a sentence in said foreign State be extradited, be returned to New York for trial and thereafter returned to the other State, is merely a codification of an already existing executive power. In this court’s view, the failure of the prosecution to make even the slightest effort to effect an executive agreement for the return of the defendant, Singleton, is fatal to the prosecution’s assertion that “ good cause ” existed for the delay in prosecuting the instant indictment. On that score, it may be observed, in passing, that the allegation, by the Assistant District Attorney in opposition to the instant motion, to the effect that another Assistant District Attorney had “communicated” with the office of the Governor of New York State in an unsuccessful effort to return a codefendant in this case for trial from the same prison where Singleton was incarcerated, is legally inadequate to raise the question of the effect which a refusal by one of the Governors of the States involved to enter into an executive agreement of the type herein under discussion would have upon the rights of an accused. The resolution of that problem must await a proper case.
The reason that this court has expounded upon its original decision in Winfrey (44 Misc 2d 140, supra) is in an effort to forestall future attempts to excuse a delay in prosecution by resorting to arguments based upon statutory construction. Clearly, the extradition laws lend themselves to such attacks. For example, section 832 of the Code of Criminal Procedure (to the same effect, see, North Carolina Gen. Stat., §§ 15-56, 15-59, 15-73) empowers New York’s Governor to enter into an executive agreement to return a prisoner from some other State jurisdiction for trial, but nowhere in the statute — or for that matter in the uniform law — is the executive authority explicitly empowered to surrender a prisoner under such an agreement. (See Rau v. McCorkle, supra.) Such a legislative hiatus, in this court’s view, may not be used to thwart the rights of an accused. Of course, it follows that the fact that a particular asylum State may not have enacted an extradition law may never be viewed as “ good cause ” for a delay in prosecution in this State.
In the instant case, a detainer warrant for the arrest of the defendant was lodged at Caledonia Prison Farm, Halifax, North Carolina, in January, 1959, after which Nassau County authori *816 ties made no effort to return the defendant for trial until March, 1965. In view of these facts and for the reasons assigned above, it is
Ordered that the indictment herein, to wit, Indictment No. 15,425, pending against the defendant, Willie Singleton, be and is hereby dismissed.