## Commonwealth ex rel. Bonomo, Appellant, *v.* Haas.

Argued November 24, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James F. McClure, Jr.,* with him *McClure & McClure,* for appellant.

*A. Thomas Wilson,* District Attorney, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 3, 1968:
This is an appeal from the order of the Court of Common Pleas of Union County directing that appel-

lant be extradited to New Jersey. This order followed the denial of appellant's petition for a writ of habeas corpus. Appellant had been committed to New Jersey State Prison on January 8, 1954, following convictions and sentences for various state offenses. On March 26, 1954 and on May 12, 1954, appellant received additional sentences on other charges. He was confined in the New Jersey State Prison in Trenton, New Jersey, from January 12, 1954 to September 12, 1961, when he was released on parole.

In July of 1964, appellant was convicted in New Jersey on a disorderly person charge, sentenced to thirty days, and confined in the Hudson County Jail. As a result of this conviction, petitioner's parole was revoked on August 5, 1964. On August 18, 1964, at the expiration of the thirty-day sentence, appellant was surrendered by New Jersey authorities to the Federal Government for trial on a charge of possessing counterfeit money. By appellant's own testimony, it appears that New Jersey placed a detainer on him when handing him over to federal authorities. Appellant was tried, convicted, and sentenced in the United States District Court in Newark, New Jersey in January, 1965, and was committed to the custody of the Attorney General of the United States. He was subsequently transported by federal marshals to the Federal Penitentiary at Lewisburg, Pennsylvania, where he was incarcerated until May 4, 1967.

A detainer being lodged against appellant at the penitentiary, upon his release he was arrested as a fugitive from justice by William F. Haas, Sheriff of Union County, Pennsylvania. The Governor of New Jersey filed a requisition with the Governor of Pennsylvania for appellant's extradition to New Jersey, and the Governor of Pennsylvania issued a warrant of extradition on June 6, 1967.

Appellant contends that the warrant of extradition is invalid for two reasons: (1) He is not a fugitive from justice from the State of New Jersey because he left that state involuntarily; and (2) The State of New Jersey waived the right to extradite him by surrendering jurisdiction to the federal authorities. Although these two contentions have often been treated as one by the courts,[1] we shall try to deal with them separately.

Article IV, §2, Cl. 2, of the Constitution of the United States provides as follows: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

Since the above Constitutional provision was considered not to be self-executing, Congress enacted the following implementing statute: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of

---

[1] In *Crady v. Cranfill*, 371 S.W. 2d 640 (Ky. 1963), the Court of Appeals of Kentucky pointed out: "When a prisoner of one state is transferred without reservation, and without his consent, to another state in order that he may be subjected to confinement in the latter, there is some reason to say that upon his release in the second state he is not a 'fugitive from justice' and thus cannot properly be extradited. Quite possibly the waiver principle originated in that theory."

the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged." June 25, 1948, Ch. 645, 62 Stat. 822, 18 U.S.C. §3182.

Pennsylvania, as have the other states, has in turn enacted its own extradition law: Uniform Criminal Extradition Act, Act of July 8, 1941, P. L. 288, 19 P.S. §§191.1 to 191.31. Section 2 of the Pennsylvania Uniform Extradition Act provides: "Fugitives from justice; duty of governor. . . . [I]t is the duty of the Governor of this State to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this State." Appellant contends that he is not a "fugitive from justice", i.e., one who had "fled from justice" because he had not left the demanding state voluntarily but rather in the custody of federal marshals, to serve a federal sentence at the penitentiary in Lewisburg, Pennsylvania. Numerous courts, however, have held that the involuntariness of the removal to the asylum state does not prevent the petitioner from being subject to extradition under the fugitive from justice provision of the extradition statutes.[2]

---

[2] We emphasize that the extradition is proper under §2 of the Act of July 8, 1941, supra. The court below relied at least in part on the second paragraph of §5 of that Act providing that: "The Governor of this State *may* also surrender on demand of the executive authority of any other state any person in this State who is charged . . . with having violated the laws of the state whose executive authority is making the demand, even though such person left the demanding state involuntarily." (Emphasis added)

"In the course of interpretation the phrase 'fled into,' found in both the Constitution and the statute, has been assimilated into the phrase 'fugitive from justice'." *United States v. Matus,* 218 F. 2d 466, 468 (2d Cir. 1954). And fugitive from justice has been given a broad meaning. "In whatever manner or for whatever reason he may have gone into the asylum State he is regarded in law as a fugitive from the justice of the demanding State." *People ex rel. McFadden v. Meyering,* 358 Ill. 442, 445, 193 N.E. 475 (1934). This view was elaborated by the Minnesota Supreme Court in *State ex rel. Shapiro v. Wall,* 244 N.W. 811, 812 (1932). "In the case of Roberts v. Reilly, 116 U.S. 80, 97, 6 S. Ct. 291, 300, 29 L. Ed. 544, the court held one to be a fugitive from justice who has committed a crime within a state and 'when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction, and is found within the territory of another.' Our own court in State ex rel. v. Richter, 37 Minn. 436, 438, 35 N.W. 9, 10, speak-

---

Appellant argues that it would be improper to permit his extradition under §5 since that section, like §6 (See *Commonwealth ex rel. Crist v. Price,* 405 Pa. 384, 175 A. 2d 852 (1961) and *Cooper v. McDermott,* 399 Pa. 160, 159 A. 2d 486 (1960)) and under §2, makes extradition discretionary with the governor. The Governor never had the opportunity to exercise his discretion in the instant case because the warrant of the Governor of New Jersey recited that petitioner had fled from the justice of New Jersey and had taken refuge in Pennsylvania. Moreover, appellant points out that the Governor of Pennsylvania will never have the opportunity to exercise his discretion in the case of involuntary departures as provided in §5 because §3 requires that the warrant, except in cases under §6 (extradition of persons not present in the demanding state at the time of the commission of the crime) allege that the person sought "fled" from the demanding state.

We agree with appellant that extradition under the second paragraph of §5 is not possible. That provision was obviously not well thought out, as indicated by its conflict with §3. Fortunately, however, it is unnecessary to extradite under §5, since §2 covers the situations §5 would cover.

ing through Mr. Justice MITCHELL, in regard to Roberts v. Reilly, said: 'The meaning of this language is unmistakable, viz.: That the motives or purposes of the party in leaving the state where the crime was committed are entirely immaterial; that all that is necessary to constitute him a fugitive from justice is (1) that, being within a state, he there committed a crime against its laws, and (2) when required to answer its criminal process, he has left its jurisdiction, and is found in the territory of another state.

"'This construction fully accords with our own views. The sole purpose of this statute, and of the constitutional provision which it was designed to carry into effect, was to secure the return of persons who had committed crime within one state, and had left it before answering the demands of justice. The important thing is not their purpose in leaving, but the fact that they had left, and hence were beyond the reach of the process of the state where the crime was committed. Whether the motive for leaving was to escape prosecution or something else, their return to answer the charges against them is equally within the spirit and purpose of the statute; *and the simple fact that they are not within the state to answer its criminal process when required renders them, in legal intendment, fugitives from justice, regardless of their purpose in leaving.'*

"It is true that these cases do not involve fugitives who have been forcibly taken from the jurisdiction of the demanding state, and that In re Whittington, 34 Cal. App. 344, 167 P. 404, holds that such a person is not a fugitive from justice; but we believe that the manner of leaving the demanding state is as immaterial as is the purpose of leaving and that the framers of the Constitution could not have intended to create a permanent asylum for a criminal if he was taken out of the demanding state by force and against his will. If

his leaving of the state under such circumstances that it would not ordinarily be called a flight makes no difference in the eyes of the Supreme Court, or if his lack of consciousness that he has committed an offense within the demanding state makes no difference, we cannot see that the manner of his leaving should be controlling in such a matter. He has left the jurisdiction of the demanding state and is found in the territory of another state whence he refuses to return to satisfy the charges made against him. We believe that this satisfies the definition of a 'fugitive from justice' under the decisions of the Supreme Court and under our own decision. We think the manifest purpose of the constitutional provision and of the acts of Congress in furtherance thereof is to effect the return of absentee criminals or those charged with crime and that these provisions should receive a liberal construction to carry out that manifest purpose which in our view includes a design to prevent the frustration of criminal procedure by the departure of a person in any manner from the jurisdiction where he is charged with crime." (Emphasis in original)

The case cited by the Minnesota court as being in opposition to its view, *In re Whittington,* 34 Cal. App. 344, 167 P. 404 (1917), has not withstood the test of time, and has almost unanimously been rejected. *Moulthrope v. Matus,* 139 Conn. 272, 93 A. 2d 149 (1952), *United States v. Matus,* supra; *In re Fedder,* 143 Cal. App. 2d 103, 299 P. 2d 881 (1956); *Davis v. Rhyne,* 181 Kan. 443, 312 P. 2d 626 (1957). We have no doubt that appellant was a "fugitive from justice" as that phrase is used in §2 of the Act of July 8, 1941.

Nor did New Jersey's surrender of appellant to federal authorities work a waiver. The argument for appellant is that where one state disrupts the sentence of a prisoner and surrenders him to another jurisdiction, the first has waived its jurisdiction over the pris-

oner. It is true that a number of courts have spoken the language of waiver. For example, in *People ex rel. Barrett v. Bartley*, 383 Ill. 437, 446, 50 N.E. 2d 517 (1943), where petitioner was extradited from Illinois to Wisconsin where he was tried, convicted and served his sentence, and then returned to Illinois, where he brought a habeas corpus proceeding, the Illinois court said: "The waiver of jurisdiction of a state over a fugitive is a prerogative of the Governor, and . . . his extradition warrant takes priority over all State process by which the fugitive is held; . . . a prisoner cannot be handed from one jurisdiction to another for the purpose of trial, conviction, and service of a new sentence, before being returned to the asylum State for service of the unexpired sentence, without violating his constitutional rights." We must assume that the surrender of appellant by New Jersey to the federal authorities was authorized. *Hayward v. Looney*, 246 F. 2d 56 (10th Cir. 1957). Thus, we do not have the easy no-waiver situation like that presented in *Commonwealth ex rel. Huey v. Dye*, 373 Pa. 508, 96 A. 2d 129 (1953), where the petitioner was freed by criminal acts of the prison guards.

Yet there was no waiver here either. Although there is dictum in other cases, e.g., *State v. Saunders*, 288 Mo. 640, 232 S.W. 973 (1921), the only one we have found clearly holding that even where a state conditions its release of the prisoner, it will be held to have waived jurisdiction is *Ex parte Guy*, 41 Okl. Crim. 1, 269 Pac. 782 (1928), emasculated by *Rider v. McLeod*, Okl. Cr. 323 P. 2d 741 (1958). The entire trend of the law is away from the position taken in *Guy*. In fact, appellant seems to realize the weakness of his legal position by asserting a different factual situation than the one actually existing. Appellant asserts, on page ten of his brief, that his state sentence was disrupted, without condition, to accommodate the

federal authorities. Yet his testimony on cross-examination at the habeas corpus hearing clearly reveals that the state authorities had placed a detainer on him, which certainly conditioned his surrender to the federal authorities.

The uniform trend of the law has been that a conditioned release is not a waiver of jurisdiction. Even in *People ex rel. Barrett v. Bartley*, supra, one of the chief cases holding that a waiver of jurisdiction can ever occur, the Illinois court is careful to distinguish the case of a conditioned release. The court, in citing *Ex parte Guy*, supra, qualified its citation by stating that they did "not mean to approve all that is said about it being beyond the power of the Governor to attach conditions for return to his requisition warrant." A leading case in Pennsylvania on the subject of waiver is *Commonwealth v. Ashe*, 114 Pa. Superior Ct. 119, 173 A. 715 (1934). There, it is true that petitioner was surrendered merely for the purpose of trial, not for serving a sentence, and that this was specifically authorized by statute. Yet it is important to note that the court there did not justify the procedure on the basis that lending a prisoner for trial is a necessary concomitant of the Sixth Amendment's guarantee of a "speedy and public trial", as appellant would have us believe to be the justification for what he admits is the frequent practice for one jurisdiction to disrupt the sentence of a prisoner in order to have him released to another jurisdiction for trial of an offense charged there. On the contrary, the court said at p. 124: "Undoubtedly, the Commonwealth of Pennsylvania waived rights the extent of such waiver was limited by the agreement of the executives that if Kamons was acquitted on the charge of murder, he should be returned to the state of Pennsylvania." See also *Rau v. McCorkle*, 47 N.J. Super. 36, 135 A. 2d 224 (1957).

The Supreme Court of Ohio, in *Guerrieri v. Maxwell,* 174 Ohio St. 40, 186 N.E. 2d 614 (1962), has decided a case where the facts were almost identical to the instant case. There petitioner was convicted in a state court of Ohio and sentenced to the Ohio Penitentiary in November, 1957. While his case was on appeal, he was out on bail. While his appeal was still pending, he was indicted by a federal grand jury and in September, 1958, convicted and sentenced to the Federal Penitentiary at Lewisburg. While petitioner was awaiting transportation to Lewisburg, the Ohio authorities placed a detainer on him. In October of 1958, petitioner was committed to Lewisburg where he remained until October of 1961 when he was paroled. Thereupon, he was returned to Ohio where the court ordered into execution the sentence imposed on petitioner in 1957. He then brought the habeas corpus petition. The court held, in language directly apposite to the instant case: "The release by the state of one in its custody or under sentence by it to the federal government to serve a subsequently imposed federal sentence does not constitute a waiver by the state to carry into execution its previously imposed sentence after the termination of the federal sentence.

"The state's right to enforce the sentence imposed by its courts was not exhausted or waived by its consent to the federal action. The holding in abeyance of the sentence pending satisfaction by the petitioner of the federal penalty and the mere delay in execution of the Ohio sentence gave no right to the petitioner to a discharge therefrom. . . . The power and right to punish the violator of its laws is not lost by a state because it consents to waive the infliction of punishment pending punishment by another state of the same criminal for the violation of its laws. . . ."

The same principles exactly apply to the instant case. It is true that *Guerrieri* is a case brought in a

court of the demanding state, whereas the instant case was brought in a court of the asylum state. Although it has been held that jurisdiction is not impaired by the manner in which the accused has been brought within the state, *Commonwealth ex rel. Patton v. Tees,* 179 Pa. Superior Ct. 605, 118 A. 2d 585 (1955) ; *Klink v. Looney,* 262 F. 2d 119 (10th Cir. 1958), it is clear that many demanding state courts, like the *Guerrieri* court, have not even mentioned that harsh doctrine, whether or not they adhere to it, and have decided the cases on other grounds, such as no waiver.[3] Nor can the *Guerrieri* case be distinguished from the instant one on the grounds that Guerrieri was out on bail pending appeal while Bonomo was incarcerated at the time of his conditional surrender to federal authorities. That is a distinction without a difference.

Nor do we believe the parole cases can be validly distinguished either. A number of cases, including *Golla v. Delaware,* 159 A. 2d 585 (Del. 1960), relied upon by the court below, a federal district court case from Pennsylvania, *United States ex rel. Pavloc v. Chairman of Board of Parole,* 81 F. Supp. 592 (W.D. Pa. 1948), affirmed in 175 F. 2d 780 (3d Cir. 1949), and a York County case, *Com. ex rel. Heiser v. Myers,* 79 York 75 (1965), have held that surrender of a parolee to another jurisdiction for trial, conviction, and service of sentence does not waive the first state's jurisdiction to require the parolee to serve the remainder of his sentence. See also *Hanford v. Grimes,* 219 Ga. 136, 132 S.E. 2d 75 (1963) and *In re Langley,* Okl. Cr., 325 P. 2d 1094 (1958). No good reason appears to distinguish the parole case from the incarceration case, inasmuch as a person released on parole is still con-

---

[3] We note that the existence of this doctrine compels Pennsylvania courts to decide the waiver question in order to do justice. The question might well be moot in a New Jersey court.

sidered a prisoner of the state, remaining in its legal custody. *Com. ex rel. Sparks v. Russell*, 403 Pa. 320, 169 A. 2d 884 (1961); *Com. ex rel. Banks v. Cain*, 345 Pa. 581, 28 A. 2d 897 (1942).

Many of the cases enunciating the no waiver principle cited above have formulated what appears to be the proper view, that the temporary relinquishment of a prisoner is a matter of comity between jurisdictions and does not involve the constitutional rights of the accused. *Guerrieri v. Maxwell*, supra; *United States v. Matus*, supra; *Davis v. Rhyne*, supra; *Crady v. Cranfill*, 371 S.W. 2d 640 (Ky., 1963). The last-cited case points out that although *People ex rel. Barrett v. Bartley* spoke vaguely of violating the constitutional rights of the accused by his temporary relinquishment, neither that case nor any other case says what those rights are. The *Crady* court concluded, correctly it seems, that no rights had been violated. The Ohio court in *Guerrieri v. Maxwell*, supra, at 44 and 46, summed up well: "Therefore, where one has placed himself in the position of being wanted at the same time by two different sovereigns for the violation of penal statutes of both, it is a matter for the sovereigns to determine which shall first exact punishment from the offender, and not the offender. Under such circumstances it is the interested sovereigns who make the determination and the offender cannot complain of the order of his trials or punishment for such offenses. . . . Petitioner has had full and complete due process of law. He was properly indicted by a valid indictment, represented by counsel and tried and convicted by a jury. He has exhausted his state remedies of appeal. More he is not guaranteed by the Constitution. He is seeking in this action to circumvent his conviction and escape the penalty of his crime by attempting to use as a shield the subsequent action of the federal government of interposing its penalty before that of the state. This he cannot do. He owed

a debt to two different sovereigns. Under our law these debts must be paid, and it is not up to the accused to determine in what order they should be paid."

The order of extradition is affirmed.