450 P.2d 392

Mike James WALSH and Michael Batchelor, Petitioners,

v.

STATE of Arizona ex rel. Frank A. EYMAN, Warden, Arizona State Prison, Respondents.

No. 9409.

Supreme Court of Arizona.

In Banc.

Feb. 6, 1969.

Shuch & Cheche, Phoenix, for petitioners.

Gary K. Nelson, Atty. Gen., Thomas M. Tuggle, Asst. Atty. Gen., Phoenix, for respondents.

LOCKWOOD, Vice Chief Justice:

Mike James Walsh and Michael Batchelor, hereinafter referred to as petitioners, were arrested in Arizona and charged with robbery. They entered pleas of guilty to the charges and were sentenced by the Superior Court of Arizona to terms of not less than five nor more than ten years at the Arizona State Prison, to date from July 26, 1965.

During August of 1965, a detainer was filed by the State of California with the Arizona State Prison, wherein it was requested that petitioners be held pursuant to a warrant of arrest issued by the State of California on or about the 11th day of May, 1965. The record indicates that in July, 1965, petitioners wrote to the District Attorney in California, requesting a speedy trial of the California charges. Thereafter demand was made by the State of California for the extradition of petitioners, and, pursuant to extradition proceedings, petitioners were delivered on January 31, 1967, to officers of the Hollywood, California Police Department who then delivered petitioners to the Sheriff of Los Angeles County for incarceration in the Los Angeles County Jail.

Petitioners entered pleas of guilty to the California charges and each was sentenced by the Superior Court of California to a term of not less than five years, "to run concurrently with sentences now serving," and further ordering petitioners to be returned and

> "delivered into custody of the proper authorities at the Arizona State Prison, Florence, Arizona. California State Prison time to commence running on receipt of defendant by Arizona State Prison authorities, § 2900 Penal Code."

On July 15, 1967, petitioners were returned to the Arizona State Prison, to complete the sentences received under their Arizona convictions. By reason of their absence from the Arizona State Prison from January 31, 1967, to July 15, 1967, the petitioners' release date was recomput-

ed and postponed by the amount of time the petitioners were absent from the Arizona State Prison, and in the custody of California authorities.

The record also indicates that two executive agreements were entered into between the Governor of Arizona and the Governor of California. A pertinent provision of the agreements was

" * * * that in the event said Michael James Walsh shall be acquitted following a trial in courts of the State of California, or the prosecution in the State of California· is terminated in any manner other than by the imposition and execution of a judgment and sentence of death, said Michael James Walsh shall be returned to the State of Arizona at the expense of the State of California, and that the Governor, or other acting executive authority of the State of California, shall upon demand of the executive authority of the State of Arizona surrender said Michael James Walsh to the duly authorized agents of the State of Arizona."

An identical provision was entered into with respect to Michael Batchelor (aka Michael Milton Wynkoop). The agreements were to be considered as accepted by the Governor of Arizona upon the release of petitioners to the California authorities. The acceptance by the Governor of Arizona was also manifested by his Governor's Warrant on Extradition in which he stated that the terms of the Executive Agreement were thereby accepted.

Petitioners have now filed petitions for writs of habeas corpus, alleging that their present imprisonment in the Arizona State Prison is unlawful.

Petitioners contend that they were wrongfully denied a request for counsel at their extradition hearing of January 25, 1967, prior to their extradition to California. They also allege that they were not informed of their right to demand counsel as required by A.R.S. § 13–1310. They strongly urge that the legal effect of their extradition to California, *prior to the com-* *pletion of their Arizona sentences,* operated as a waiver by Arizona of any further jurisdiction over their persons and as a pardon or commutation of the remainder of their Arizona sentences, and therefore their present confinement at the Arizona State Prison is clearly illegal. Petitioners object to their redelivery to Arizona without benefit of new extradition proceedings. Their last contention is that respondent, Frank A. Eyman (warden of the Arizona State Prison) wrongfully recomputed and postponed their release date without proper authority.

We will first answer petitioners' allegation that they were not informed of their right to demand counsel and that they were denied the right of counsel in the extradition proceedings prior to their transfer to California. Assuming, without deciding, that the petitioners were not informed of their right to demand counsel and that they were wrongfully denied their right to counsel in the extradition hearing, we hold nevertheless that such action would not affect petitioners' present incarceration.

The above issue was presented to the Illinois Supreme Court in People ex rel. Lehman v. Frye, 35 Ill.2d 343, 220 N.E.2d 235 (1966). Jean Edward Lehman, the petitioner in that case, was being held in the Illinois State Penitentiary pursuant to a conviction and sentence for certain felonies committed in Illinois. Extradition was requested by the State of Iowa for the purpose of trying Lehman for the crime of forgery, and it was granted by the Governor of the State of Illinois. A condition to releasing the fugitive to Iowa was contained in an agreement between the Governors of the two states by which Lehman was to be returned to the Illinois State Penitentiary following the conclusion of the Iowa trial. He was delivered to Iowa authorities and, following his discharge by the Iowa Court, he was returned to the Illinois institution. Lehman sought release by writ of habeas corpus because during his extradition from Illinois to Iowa, the State of Illinois failed to take him before a

circuit judge and inform him of his right to demand counsel as required by provision of the Uniform Criminal Extradition Act (similar to A.R.S. § 13–1310). The Illinois Court held that such denial of Lehman's rights did not affect his remaining sentence in the Illinois penitentiary.

"While the prisoner was entitled to be taken before a circuit judge under section 10, the failure to do so does not attain constitutional dimensions in connection with serving the sentence imposed by an Illinois court where the conviction and sentence is not under attack. Section 11 (par. 28) of the act makes it a misdemeanor to wilfully disobey the admonition of section 10 but *does not make the violation a waiver of the right to regain and hold custody of the prisoner until his sentence shall have been completed.*" 220 N.E.2d at 237. (Emphasis supplied.)

Petitioners in the case at bar contend that the legal effect of their extradition to California, prior to completion of their Arizona sentences, was a waiver by Arizona of any further jurisdiction over petitioners, and that such extradition effected a commutation or pardon of the remainder of their sentences.

Petitioners cite People ex rel. Barrett v. Bartley, 383 Ill. 437, 50 N.E.2d 517, 147 A.L.R. 935 (1943), as authority for their contention that there was a waiver. That case involved circumstances similar to the present case, except that there was no agreement between the executives of the two states that the prisoner would be returned to the asylum state after trial in the demanding state. The Illinois Supreme Court held that in the absence of a statute governing temporary waiver of jurisdiction, and *in the absence of any agreement for the return of the prisoner between the Governors* of Illinois and Wisconsin, the action of the Governor of Illinois " * * * operated to waive any further jurisdiction over the person of the prisoner * * *." 50 N.E.2d at 521. The holding of the Barrett case must necessarily be limited to extraditions of fugitives in the absence of

any agreement for their return between the executives of the demanding states and the asylum states.

Barrett does not answer the real question of the authority of a governor to attach conditions for the return of a person being extradited, by way of executive agreement. Barrett cites the case of Ex Parte Guy, 41 Okl.Cr. 1, 269 P. 782 (1928) in which the Oklahoma Court held that it was beyond the power of an executive to condition the extradition of a prisoner on his return for purposes of completing an existing sentence in the asylum state. The court in Barrett expressly stated that

"By citing this case as authority we do not mean to approve all that is said about it being beyond the power of the Governor to attach conditions for return to his requisition warrant, but that question is not before us in this case." 50 N.E.2d at 521.

The Superior Court of New Jersey, Appellate Division, in Rau v. McCorkle, 47 N.J.Super. 36, 135 A.2d 224 (1957) had to determine whether the Governor of New Jersey had authority to enter into an executive agreement with the Governor of New York, whereby defendants serving sentences in New Jersey were extradited to face charges in New York. The executive agreement conditioned the extradition on the return of the prisoners to New Jersey after disposition of the charges in New York. That court concluded that there was no specific provision in the New Jersey statutes authorizing the Governor of New Jersey to enter into such a conditional extradition, but the court held that:

"Principles of comity as between sovereigns amply warranted New Jersey, which had possession of and jurisdiction over plaintiffs in respect of crimes they were convicted of and charged with here, to surrender them to New York for prosecution on charges pending against them there conditionally upon their redelivery here after disposition of the charges in New York." 135 A.2d at 226.

That court specifically rejected the contention that such an agreement had to be founded upon statutory authorization enacted in both states. The rationale for the New Jersey holding is pertinent to the facts of the case at bar.

"The arrangement thereby consummated served the public policy that plaintiffs should have the benefit of their constitutional right to speedy trial or other disposition of the New York charges which would take place at a time when the evidence to be relied on by both sides was fresh, at the same time securing to New Jersey its right to exact prior satisfaction from plaintiffs for their depradations here. Ibid. In that procedure plaintiffs can point to no deprivation or impairment of any right of substance." 135 A.2d at 226.

In People v. Singleton, 47 Misc.2d 810, 263 N.Y.S.2d 203 (1965), the New York Court stated that:

"As a practical matter, it is possible for New York State authorities to return accused persons to this state for trial from another state jurisdiction by the device of Executive Agreement. For, as a matter of comity, the executive authorities of various states may agree that a prisoner serving a sentence in the asylum state will be surrendered for trial to the demanding state on condition that the said prisoner be returned to the asylum state after trial, without either state waiving jurisdiction over the prisoner. (Ponzi v. Fessenden, 258 U.S. 254, 42 S. Ct. 309, 66 L.Ed. 607 (1921); Haywood v. Looney, (10th Cir. 1957) 246 F.2d 56; Rau v. McCorkle, 47 N.J.Super. 36, 135 A.2d 224 (1957); 22 Am.Jur., Extradition, Sec. 64, para. 302). Accordingly, *the section of New York's extradition law* (Code of Criminal Procedure § 832) *empowering the Governor to agree with the executive authority of a foreign state that a person serving a sentence in said foreign state be extradited; be returned to New York for trial and thereafter returned to the other state, is merely a codification of an already existing exec-*

*utive power."* 263 N.Y.S.2d at 207, 208 (Emphasis supplied.)

■ In view of our holding that the Governor has authority, in the absence of statutory provision, to enter into an executive agreement conditioned on the return of the prisoners, it would defeat the principles of public policy indicated above to hold that such action constituted a waiver of further jurisdiction over the petitioners. We agree with the court in Rau, *supra,* that cases holding to the contrary "* * * are based upon what we consider attenuated reasoning without justification either in public policy or in any fair requirement of substantial justice for the prisoners involved." 135 A.2d at 226. We thus hold that there was no waiver by Arizona of jurisdiction over the persons of petitioners for purposes of requiring them to fulfill the remainder of their Arizona sentences.

■ Petitioners object to their redelivery to Arizona, following the disposition of the California charges, without benefit of new extradition proceedings. We believe that this objection is without merit. The executive agreement between the Governors of Arizona and California was a part of the original extradition proceedings and petitioners return to Arizona pursuant to that agreement made it unnecessary to initiate new proceedings in California for purposes of returning petitioners to Arizona. Any objections to the condition in the agreement for the return of petitioners to Arizona could have been raised in the original extradition proceedings in Arizona, and it would unnecessarily encumber the extradition process to require an additional hearing in California to present a second opportunity to test the validity of the condition for petitioners' return.

The Rau case, *supra,* also states an effective argument against the present objection:

"Even if the surrender of plaintiffs to New York were to be regarded as technically effective to divest New Jersey of jurisdiction over them, so as, for example, to obviate extradition to New Jersey

if they had found their way from New York to another state (as to which we express no opinion), the fact of present possessory jurisdiction by New Jersey renders the matter moot, as *habeas corpus* lies only where the applicant is entitled to immediate release. In re Kershner, 9 N.J. 471, 88 A.2d 849 (1952). Plaintiffs are not so entitled. Each of them owes the State long penal service." 135 A.2d at 226, 227. (Emphasis in original.)

■ In response to petitioners' last contention, we hold that the Warden of the Arizona State Prison was not authorized to recompute and postpone petitioners' release date by the amount of time that petitioners were in the custody of California authorities pursuant to the executive agreement.

We do not believe that it was within the power of the Executive of Arizona to increase petitioners' punishment after they had been committed thereunder. What the Governor could not do directly, he may not do indirectly through the process of extraditing petitioners to California conditioned on their return for completion of their Arizona sentences.

We believe that there are sound reasons of public policy for holding that petitioners are entitled to credit for that time spent answering California charges. In the California Assembly's Reports of Assembly Interim Committee on Criminal Procedure, 1961–1963, Vol. 22, No. 3, p. 155; Vol. 2 of Appendix to Journal of the Assembly, Reg.Sess., 1963, the writers of the reports had occasion to review the process by which the authorities of one state can detain a person being held in a prison of another state. They state that:

"The advantage of a detainer is obvious: it makes available a fugitive without the expense of finding him once released to society. The present system, however, presents many problems to the requesting authorities, the prison authorities, and the prisoner himself. It was to overcome many of these problems that

the Counsel of State Governments drafted the Agreement on Detainers, which has now been ratified by six states." Ibid. at p. 158.

The writers also discuss some of the problems which indicate the defects of the detainer system. Among these is

"* * * the psychological effect a detainer has upon a prisoner. The adjustment to prison is difficult at best; when the prisoner does not know whether he will have to serve another sentence at the completion of the present one, the problem is greatly increased." Ibid. at p. 158.

The reports quote the Director of the Federal Bureau of Prisons who said:

"'Yet it is in their effect upon the prisoner and our attempt to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner's ability to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination toward self-improvement.'" Ibid. at p. 158.

Other disadvantages present where a detainer is filed are that it is often a reason for an automatic denial of parole, and it prevents a prisoner from taking advantage of privileges oriented toward his rehabilitation.

"In these cases a prisoner is then released at the end of his sentence and sent back to society without having had the benefits of a rehabilitation program. Indeed, as it is difficult to see how a man will improve himself when kept in maximum custody and uncertain of his future, it is most probable that such a person will be more dangerous to society than when he was first imprisoned." Ibid. at p. 161.

The whole thrust of such interstate extradition of prisoners is to guarantee the demanding state and the prisoner the benefits of a speedy trial. It also has the ad-

vantage of eliminating many of the above mentioned problems relating to detainers. It would be inconsistent to promote interstate extraditions of prisoners for the policy reasons enumerated above and then penalize the prisoners by increasing their original sentences by the amount of time they were subject to such extradition. (In order to obviate such a paradoxical result, the proposed text of the Agreement on Detainers would provide that the sentence of the sending state would continue to run. (Article V, subsection (f), Ibid. at p. 169)).

■ Respondent argues that petitioners are not entitled to credit against their Arizona sentences under the terms of A.R.S. § 13–1652 which provides that:

"The term of imprisonment fixed by the sentence commences to run only upon actual delivery of defendant at the place of imprisonment, or from the time fixed by the court as the time when the term of imprisonment begins. If thereafter, during such term, the defendant by legal means is temporarily released from the imprisonment and subsequently returned thereto, the time during which he was *at large* shall not be computed as part of the term." (Emphasis supplied.)

The above statute prohibits credit only for such time that the defendant was "at large". It would unduly broaden the meaning of the expression "at large" to hold that it included such time as defendant may have been in the custody of California authorities subject to an Executive Agreement for his return to Arizona for purposes of completing his Arizona sentence, unless it were shown that plaintiffs were released from custody pending trial in California.

We do not feel that the case of Lyons v. State ex rel. Eyman, 5 Ariz.App. 364, 427 P.2d 345 (1967) supports respondent's contention that petitioners are not entitled to credit for the time spent in custody of the California authorities. That case involved a defendant who was sentenced to not less than three nor more than four years.

"The judgment of conviction recited that 'commencement of this sentence shall begin on the date you are delivered to the State Penitentiary at Florence, Arizona.'" 5 Ariz.App. at 365, 427 P.2d at 346. The question involved was whether defendant was entitled to credit on his sentence for the period of time he was incarcerated in the county jail between the date sentence was imposed and the date he was committed to the state prison. The court held that he was not entitled to such credit.

The holding of the Lyons case, *supra*, must necessarily be limited to denying credit for time a defendant is held in custody *prior* to the beginning of his sentence. It does not follow that he should be denied credit spent in custody *after* his sentence has begun.

We agree with the Minnesota Supreme Court in State ex rel. Siehl v. Jorgenson, 176 Minn. 572, 224 N.W. 156, 62 A.L.R. 244 (1929) that:

"From the moment relator began his jail term and for the full period of his sentence he was by law restrained of his liberty and confined in quarters not of his choosing. And it seems to us that when a person who has begun to serve a jail sentence is by legal process removed therefrom and detained in custody elsewhere, the time he is thus elsewhere applies upon his sentence." 224 N.W. at 157.

The above case held only that a prisoner was entitled to credit for time spent outside the prison and in custody at a hospital, but the reasoning should apply equally where a prisoner is restrained for purposes of extradition proceedings, especially where the extradition is conditioned on the return of the prisoner to the sending state.

Because we anticipate that certain questions may arise with respect to credit towards petitioners' terms of imprisonment under the provisions of A.R.S. §§ 31–251 and 31–252, we will consider the facts of this case relative to those provisions.

■ A.R.S. § 31–251, which allows credit towards a sentence for "good conduct

time", is hereby construed as applying to the time a prisoner is held in custody of another state, while under extradition from this state, and who is subject to return to this state under the terms of an Executive Agreement between the Governor of this state and the Governor of the demanding state.

A.R.S. § 31–252, which allows double time for certain labor as a trusty, is not applicable to the facts of this case where time is spent outside the custody of the Arizona State Prison. Such prisoner cannot be performing an assignment of confidence and trust with respect to his imprisonment at the Arizona State Prison, and thus would not come within the terms of the above statute.

For the foregoing reasons petitioners' application for writ of habeas corpus is denied.

UDALL, C. J., STRUCKMEYER, Mc-FARLAND and HAYS, JJ., concur.